[Crim. No. 12695. In Bank. May 7, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. FRED LEON BERUTKO, Defendant and Appellant.

Fred Leon Berutko, in pro. per., Frederic G. Marks, under appointment by the Supreme Court, Robert P. Mandler, under appointment by the Court of Appeal, and Wellman, Contarino & Mandler for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Brian Amer, Deputy Attorney General, for Plaintiff and Respondent.

SULLIVAN, J. — Defendant Fred Leon Berutko was charged by information with one count of possession of heroin (Health & Saf. Code, § 11500) and one count of possession of heroin for sale (Health & Saf. Code, § 11500.5). The information also charged one prior conviction for possession of heroin. He entered a plea of not guilty to the charged offenses and denied the prior conviction. Trial by jury was waived and the cause was submitted on the transcript of the preliminary examination; by stipulation all exhibits received at the preliminary examination were marked for identification and offered into evidence subject to objections by counsel. Following argument defendant was found guilty, motion for a new trial was denied, and the allegation of the prior conviction was found to be true. Criminal proceedings were then suspended and proceedings were instituted under section 3051 et seq. of the Welfare and Institutions Code. Upon defendant's return from the narcotics rehabilitation center, criminal proceedings were resumed, probation was denied, and defendant was sentenced to state prison. He appeals from the judgment of conviction.

On July 30, 1965, Officer Charles Wilson, a detective assigned to narcotics duty, received information from an informant that defendant was engaged in the sale of heroin at a certain address in Los Angeles. The informant also stated that defendant was on parole from a prior narcotics conviction but was not reporting to his parole officer. A physical description of defendant was given and it was represented that he drove a red and white Buick automobile. No license number was provided.

Officer Wilson's prior contact with the informant had been limited to several telephone conversations. One arrest had been made on the basis of information provided by him, and the person arrested had been held to answer, but the case had not yet come to trial.

After verifying defendant's prior conviction through police records and obtaining his photograph, Officer Wilson and three other officers went to the address provided by the informant. They had neither an arrest nor a search warrant. The manager of the apartment building identified defendant from the photograph and stated to the officers that he had "a numerous amount of traffic" to and from his apartment and that he "appeared suspicious."

The officers placed defendant's apartment under surveillance. They saw several persons go to the door and then leave without entering; it appeared that there was no one at home. Presently defendant drove up in a red and white Buick and entered his apartment. The officers continued their surveillance for 10 to 15 minutes, and several times during this period Officer Wilson saw defendant come to a window and look briefly outside.[1]

Officer Wilson then went to the front portion of the apartment. The window there was covered by a light curtain or drape, the bottom of which rested upon a table in such a way that an aperture was formed through which a part of the interior of the apartment was visible.[2] Looking through this aperture the officer saw a coffee table upon which there was a finger stall or condom which contained some "lumpy" material and was tied off at one end. On the basis of his experience in narcotics investigations the officer formed the opinion that the finger stall contained heroin packaged for sale in balloons.

The officers thereupon obtained a key from the manager of the apartment building and entered defendant's apartment without knocking or giving any announcement as to their identity or purpose. They seized the condom, which contained 12 balloons of heroin, and arrested defendant. A further search

---

[1]Officer Wilson first testified that he "observed the defendant to peak [sic] out of the—around the window shade and blind." Upon motion of defendant, however, the phrase "peak [sic] out" was stricken as a conclusion, and the officer went on to testify: "I observed the defendant's face come into view around the shade and blind of the apartment, or I could see a portion of his face. I observed this several times."

[2]Officer Wilson testified: "The drape was up on top of the table, and it was resting on a box. By looking in through this opening or this area that I could see, a matter of a few square inches into the room . . . ."

of the apartment disclosed various items of narcotics paraphernalia.

■ Defendant contends that the entry into his residence was made in violation of section 844 of the Penal Code,[3] that the evidence obtained as a result of that entry was therefore illegally obtained and should not have been admitted against him, and that the judgment must be reversed because such evidence was crucial to his conviction. Although there is some question on the instant record whether defendant at trial objected to the admission of the subject evidence on the ground which he now seeks to advance, any failure on his part to make a proper objection is excused because the trial of the instant case took place prior to our decision in *People* v. *Gastelo* (1967) 67 Cal.2d 586 [63 Cal.Rptr. 10, 432 P.2d 706], and the contention is therefore properly before us on this appeal. (*People* v. *De Santiago* (1969 *ante,* p. 18 [76 Cal.Rptr. 809, 453 P.2d 353].)

■ The People do not maintain that the officers' conduct prior to entry constituted compliance with section 844. They do urge, however, that their noncompliance was excused because specific factual circumstances existing prior to entry gave rise to a reasonable belief on the part of the officers that unannounced entry was necessary to prevent destruction of evidence.[4] (See *People* v. *De Santiago, supra, ante,* pp. 18, 28; *People* v. *Gastelo, supra,* 67 Cal.2d 586, 588-589.) Reference is made to defendant's repeated glances out of the window of his apartment shortly after his arrival, and it is argued that the officers could reasonably have concluded that this conduct was undertaken in order that the contraband might be quickly disposed of as soon as the presence of law enforcement officers was noted.

Because the instant case was tried prior to our *Gastelo* decision, neither party made any effort to learn from Officer Wilson the basis of his belief that unannounced entry was necessary to prevent the disposal of evidence. (See fn. 4, *ante.*) It is possible, of course, that he based that belief upon

---

[3]Section 844 provides: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

[4]Officer Wilson testified that he made an unannounced entry "To avoid having the contraband being disposed of." There is no indication in the instant record that the entry was in any way motivated by the officers' regard for their own safety or the possibility of escape.

the specific factual circumstances to which the People have adverted. It is also possible, however, that he based that belief wholly upon his general experience in dealing with narcotics offenders and his knowledge that the kind of evidence sought was subject to rapid disposal.[5] Since record before us is silent on this point, we cannot now determine as a matter of law that the officers' noncompliance with section 844 was excused, and the judgment must therefore be reversed. (Cf. *People* v. *Kanos* (1969) 70 Cal.2d 381, 385 [74 Cal.Rptr. 902, 450 P.2d 278].) In the event of retrial the parties may develop the record in order to permit a proper determination of the matter of excuse in light of the *Gastelo and De Santiago* decisions.

For the guidance of the court in the event of retrial we treat some additional contentions raised by defendant.

██ Defendant contends that the officers were without reasonable and probable cause to arrest him prior to their entry, and that therefore the arrest and seizure after entry were unlawful. It is pointed out that the record does not show that the informant relied upon by Officer Wilson spoke of his own personal knowledge; it is further urged that the informant was not shown to be reliable. It is not necessary, however, that we determine whether the information provided by the informant was legally sufficient *in itself* to constitute probable cause to arrest defendant. Certainly that information was sufficient to justify the further investigation which was undertaken by the officers and which culminated in their surveillance of defendant's apartment. That surveillance in turn culminated in Officer Wilson's act of looking into the apartment through the aperture formed by the arrangement of the drapes. What he saw there (i.e., a finger stall tied off at one end containing some ''lumpy'' material, in combination with the other facts which his investigation had disclosed, was sufficient—in view of the officer's training and experience in the

---

[5]As we have explained in *People* v. *De Santiago, supra, ante,* p. 18, competent and knowledgeable defense counsel (and therefore *a fortiori* competent and knowledgeable law enforcement officers) must necessarily have been under the impression prior to *Gastelo* that compliance with sections 844 and 1531 ''was excused by law without any showing of particular exigency whenever the nature of the evidence sought was such as to facilitate easy disposal.'' (*Ante,* at p. 27.) It is therefore clear that a competent and knowledgeable officer prior to *Gastelo* would not have felt himself under any *obligation* to examine his reasons for unannounced entry in a narcotics case in light of particular factual circumstances confronting him. This is not to say, of course, that the officer here in question did not *in fact* decide to effect unannounced entry because of such factual circumstances.

field of narcotics—to constitute reasonable and probable cause for arrest.

██ It is contended, however, that the officer's act of looking through the aperture was itself an unreasonable search and a violation of defendant's right of privacy. We do not agree. It is clear that this case does not involve the difficult questions which arise when the officer's observation is secured from a vantage point which he has gained by trespass. (See *People* v. *Willard* (1965) 238 Cal.App.2d 292 [47 Cal.Rptr. 734], and the many cases therein cited and discussed.) For aught that here appears the officers at no time strayed from common areas available to the other tenants of the apartment building as well as to other persons admitted by such tenants or the management and having legitimate business upon the premises. Nor are we here concerned with a situation wherein visual access to defendant's premises was obtained by means of an aperture made or installed for the purpose of observation by law enforcement officers or those cooperating with them. (See *People* v. *Regalado* (1964) 224 Cal.App.2d 586 [36 Cal.Rptr. 795].) Rather, the instant case involves observation by an officer from a place where he had a right to be and through an opening which *defendant* had provided through his arrangement of drapes covering his window.

In *People* v. *King* (1965) 234 Cal.App.2d 423 [44 Cal.Rptr. 500], police officers went to the vicinity of the defendant's residence in response to complaints on the part of neighbors that he "was keeping late hours and had an odd assortment of company." Upon arrival the officers observed a known narcotics offender emerging from the defendant's residence; he was apprehended and searched, but the officers found no narcotics, although they noticed an odor of marijuana about his person. Thereupon the officers entered the defendant's front yard which was enclosed by a low fence, and proceeded to the front porch. Adjacent to the front door was a window. "The blind was drawn but there was an opening of approximately 1½ to 2 inches in width. . . ." (234 Cal.App.2d at p. 426.) Stooping down to peer through the opening an officer looked inside the residence and saw an individual rolling a marijuana cigarette. After a forced entry[6] the officers effected arrests and seized a quantity of marijuana.

On appeal it was held that the officer's observation through

---

[6] In *People* v. *Santiago, supra, ante,* p. 18, at p. 26, we listed the *King* case among those representative of the pre-*Gastelo* rule governing unannounced entry.

the defendant's window constituted neither an unlawful search nor an unreasonable violation of his privacy. The court recognized that certain federal cases had indicated that observations made through the window of a residence constituted an illegal search. (See *Monnette* v. *United States* (5th Cir. 1962) 299 F.2d 847, 850-851; *California* v. *Hurst* (9th Cir. 1963) 325 F.2d 891, 898; *Brock* v. *United States* (5th Cir. 1955) 223 F.2d 681, 685.) Nevertheless it emphasized that the United States Supreme Court had expressly stated in *Ker* v. *California* (1963) 374 U.S. 23, 31 [10 L.Ed.2d 726, 736, 83 S.Ct. 1623] that " '*Mapp* [*Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933]], however, established no assumption by this Court of supervisory authority over state courts, cf. *Cleary* v. *Bolger* (1963) 371 U.S. 392, 401 [9 L.Ed.2d 390, 396, 83 S.Ct. 385] and, consequently, it implied no total obliteration of state laws relating to arrests and searches in favor of federal law.' " (234 Cal.App.2d at p. 429.) Then, noting that this court in *Bielicki* v. *Superior Court* (1962) 57 Cal.2d 602 [21 Cal. Rptr. 552, 371 P.2d 288], had not undertaken "to define the origin, location, or minimum diameter of the apertures through which police officers may look without making a search in violation of constitutional rights" (57 Cal.2d at p. 607), the court in *King* concluded that the officers there had a right to be on the defendant's porch in order to discharge their investigative duties[7] and that the manner of observation was not improper. "The fact that there was an uncovered portion of the window adjacent to the front door through which the officers could see into the living room was not brought about by any act on the part of the officers or third persons. (Cf. *People* v. *Regalado,* 224 Cal.App.2d 586, 589 [36 Cal.Rptr. 795].) The presence or absence of such an aperture was a matter within the control of the occupants of the house. The open space was at such a point that any person who came upon the porch could have ready access to it. The circumstance that [the officer] had to lower the position of his head to see through the opening is not a decisive factor in resolving the question presented in this case since the propriety of the officer's action could not reasonably be held to depend upon the chance factor of the location of the uncovered portion of the window. (Cf. *People* v. *Steffano, supra,* 177 Cal.App.2d 414 [2 Cal.Rptr. 176].) " (234 Cal.App.2d at p. 432.)

---

[7] We intimate no present opinion as to the extent to which law enforcement officers may, consistent with the demands of the Fourth Amendment, effect trespasses in the course of their investigative duties.

In the course of its opinion in *King* the court quoted with approval the following language from *State* v. *Smith* (1962) 37 N.J. 481 [181 A.2d 761], cert. denied 374 U.S. 835 [10 L.Ed. 2d 1055, 83 S.Ct. 1879] : "Peering through a window or a crack in a door or a keyhole is not, in the abstract, genteel behavior, but the Fourth Amendment does not protect against all conduct unworthy of a good neighbor. Even surveillance of a house to see who enters and leaves is something less than good manners would permit. But it is the duty of a policeman to investigate, and *we cannot say that in striking a balance between the rights of the individual and the needs of law enforcement, the Fourth Amendment itself draws the blinds the occupant could have drawn but did not.*" (Italics added.) (37 N.J. at p. 496.) (234 Cal.App.2d at p. 431.)

We are persuaded that the *King* case properly states the law applicable to the instant case, and that here, as in *King,* the officer's observation through the aperture provided by defendant's arrangement of the window covering constituted neither an unreasonable search nor an unreasonable invasion of defendant's privacy. ▮ "There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances." (*Go-Bart Importing Co.* v. *United States* (1931) 282 U.S. 344, 357 [75 L.Ed. 374, 382, 51 S.Ct. 153] ; see *Bielicki* v. *Superior Court, supra,* 57 Cal.2d 602, 605.) Essential to the determination of reasonableness in cases wherein officers obtain probable cause for arrest through their own observations is a consideration of the degree of privacy which a defendant may reasonably expect in a given enclosure occupied by him, whether or not that enclosure be his residence. (*Katz* v. *United States* (1967) 389 U.S. 347, 351 [19 L.Ed.2d 576, 581, 88 S.Ct. 507] ; *Polk* v. *United States* (9th Cir. 1961) 291 F.2d 230, 232; *People* v. *Willard, supra,* 238 Cal.App.2d 292, 307.)[8] ▮ "What a person exposes knowingly to the public, even in his own home or office, is not a subject of Fourth Amendment protection." (*Katz* v. *United States, supra,* 389 U.S. 347, 351 [19 L.Ed.2d 576, 582].) When, as in the instant case, a person by his own action or neglect allows visual access to his residence by pro-

[8]See concurring opinion of Harlan, J. in *Katz* v. *United States, supra,* 389 U.S. 347, at p. 361 [19 L.Ed.2d 576, at p. 587] : "My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' "

viding an aperture adjacent to a common area, he may not complain that police officers who were lawfully present in that area have utilized that aperture to detect the commission of crime within.

█ Defendant further contends that, even if the officers had reasonable and probable cause to arrest, their entry and search was improper because they failed to obtain a warrant. It is clear, however, that a search incident to lawful arrest need not be authorized by warrant. (*People* v. *Burke* (1964) 61 Cal.2d 575, 578 [39 Cal.Rptr. 531, 394 P.2d 67].) "The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case." (*United States* v. *Rabinowitz* (1950) 339 U.S. 56, 66 [94 L.Ed. 653, 660, 70 S.Ct. 430]; see *People* v. *Webb* (1967) 66 Cal.2d 107, 118-119 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708].)

█ Defendant also contends that he had a right to have a jury determine the validity of his prior conviction. He recognizes of course that he waived a jury trial and after he had denied that he had suffered the prior conviction, but he urges that that general waiver was directed only to the charged offenses and did not constitute a waiver of jury trial as to the prior conviction. It is pointed out that section 969½ of the Penal Code provides in relevant part that "the question whether or not he has suffered such previous conviction must be tried by a jury impanelled for that purpose, unless a jury is waived, in which case it may be tried by the court," and it is urged that this section contemplates a specific waiver of jury trial as to prior convictions. (See also Pen. Code, §§ 1025, 1158.)

This contention is without merit. (*People* v. *Russell* (1961) 195 Cal.App.2d 529, 532 [16 Cal.Rptr. 9]; *People* v. *Collins* (1953) 117 Cal.App.2d 175, 183 [255 P.2d 59].) "[T]he whole spirit and intent of these statutes appear to be that a prior conviction charge is to be determined solely as one of the issues in the trial for the new offense." (*People* v. *Ysabel* (1938) 28 Cal.App.2d 259, 263 [82 P.2d 476].) █ "It is settled that where a defendant waives a jury trial he is deemed to have consented to a trial of all of the issues in the case before the court sitting without a jury." (*People* v. *Russell, supra,* 195 Cal.App.2d 529, 532.)

█ Defendant contends that it was improper to allege and prove his prior narcotics conviction because the statute

enhancing punishment on the basis of such a prior conviction (Health & Saf. Code, § 11501) is unconstitutional. This contention is without merit. Statutes which prescribe enhanced penalties for subsequent offenses are clearly constitutional. (*In re Rosencrantz* (1928) 205 Cal. 534, 537-540 [271 P. 902]; *People* v. *Dutton* (1937) 9 Cal.2d 505, 507 [71 P.2d 218]), and such statutes applying to narcotics offenses have been sustained against constitutional attack. (See *People* v. *Calderon* (1962) 205 Cal.App.2d 566, 572-573 [23 Cal.Rptr. 62].)

Defendant further contends that the prior conviction could not be properly utilized to enhance punishment because he was a minor at the time of such conviction and was committed to the California Youth Authority rather than sentenced to state prison. This contention is also without merit. (*In re Sanchez* (1966) 65 Cal.2d 556 [55 Cal.Rptr. 422, 421 P.2d 430].)

Defendant contends that he will be placed twice in jeopardy in violation of constitutional and statutory provisions (U.S. Const., 4th Amend.; Cal. Const., art. I, § 13; Pen. Code, § 1023) if he is made to face a new trial on the count charging him with possession of heroin for sale. His reasoning, as we understand it, is as follows: Because defendant was found guilty and convicted of possession of heroin (count I) it was required that he be acquitted of the greater offense of possession of heroin for sale (count II)—although the trial court refused to do so. In view of this "acquittal," defendant urges that he may not constitutionally be required to stand trial on count II, if a retrial is sought. We need not at this time point out the several serious defects in this reasoning. "The proscription against multiple prosecution does not apply where there has been but one prosecution, i.e., a single criminal action; it prohibits only a *subsequent* prosecution for the same act or omission, which, of course, means the filing and pressing of a new criminal action. (*People* v. *Tideman*, 57 Cal.2d 574, 584-585, 587 [21 Cal.Rptr. 207, 370 P.2d 1007].)" (*People* v. *Seiterle* (1963) 59 Cal.2d 703, 712 [31 Cal.Rptr. 57, 381 P.2d 947].)

Because different evidence may be produced in the event of retrial and we cannot anticipate the verdicts which may result, we do not here consider defendant's contentions relative to conviction for both of the charged offenses (see *People* v. *Wallace* (1962) 199 Cal.App.2d 678 [18 Cal.Rptr. 917]) and multiple punishment (Pen. Code, § 654).

The judgment is reversed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

Respondent's petition for a rehearing was denied June 4, 1969.