[Crim. No. 15144. Second Dist., Div. Four. July 16, 1969.]

THE PEOPLE, Plaintiff and Appellant, v. KENNETH CALVIN COX et al., Defendants and Respondents.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Evelle J. Younger, District Attorney, Harry Wood and Donald J. Kaplan, Deputy District Attorneys, for Plaintiff and Appellant.

Thomas D. Griffin, under appointment by the Court of Appeal, Richard S. Buckley, Public Defender, John R. Kronenberg and James L. McCormick, Deputy Public Defenders, Allen, Wilson & George and Edward P. George for Defendants and Respondents.

KINGSLEY, J.—The People appeal, under subdivision (7) of section 1238 of the Penal Code, from an order dismissing a prosecution for narcotic violation after the court, on the mo-

tion of defendants, had made an order under section 1538.5 of that code suppressing certain evidence. We affirm the order.

For reasons discussed below, if the order under section 1538.5 was properly made, a right to a dismissal of the prosecution followed. Defendants sought the order of suppression on two grounds: (1) that the evidence suppressed was secured by the police as the result of an entry made in violation of section 844 of the Penal Code; (2) that the evidence procured by the police officers prior to their entry was obtained by an unconstitutional violation of defendants' right to privacy; and that, without such evidence, there was no cause to arrest or enter.[1] We conclude that the first contention is correctly taken and that we need not determine the second.

A neighbor of defendant Kellotat reported to the police that she had observed someone injecting himself in Kellotat's apartment and that many different persons went in and out of that apartment. From other sources the police knew of narcotic activity on Kellotat's part and had been told that he used his apartment as a "shooting gallery."[2] With the permission of the complaining neighbor, officers conducted a surveillance of Kellotat's apartment from the neighbor's apartment. For about two weeks, nothing significant was observed.[3] On August 14, 1967, at about 7:30 p.m., the surveillance was resumed. By standing on a chair and using binoculars, Officer Dvorak was able to see part of the interior of the apartment. He testified as to what he saw as follows:

"A. At that time I observed in defendant Ryan's right hand what appeared to be a plastic eyedropper with a bulblike object affixed to the end. There appeared to be a needle attached. And he had his left arm in an upraised position and he appeared to be pumping it. He would raise it up and down, like this, and close and unclose his fist.

"The juvenile at this time was holding onto his left arm above the elbow region and seemed to be assisting him in this process.

---

[1]At oral argument, counsel suggested that, in addition to other grounds for suppression of the evidence, the search that followed the entry had been more extensive than is permitted under *Chimel* v. *California*, 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], decided by the Supreme Court of the United States on June 23, 1969. Since we determine that the entry was illegal, and since that illegality bars the use of everything resulting from the entry, we do not reach the issue of extent of search.

[2]In the parlance of the narcotic user: a place resorted to for the purpose of injecting narcotics.

[3]On one occasion, an officer saw what he thought was the conclusion of an injection.

"Q. Did you form an opinion at that time, Officer, as to what was occurring inside that location?

"A. It was my opinion at that time that he was injecting himself with either a drug or a narcotic."

The officers then ran to the Kellotat apartment and, without knocking or other warning,[4] opened the door and entered. The three defendants and a quantity of heroin, marijuana and narcotic paraphernalia were discovered. During the search, defendant Kellotat voluntarily said: "All the dope in the house is mine."

## I

The officers testified that their entry—in conceded violation of the provisions of section 844—was justified by their belief that evidence would be destroyed,[5] by their belief that narcotic dealers of Kellotat's type would be armed, and their fear that, since there were several men in the apartment, they might be attacked. None of the reasons, as given, were more than the generalized belief based on the kind of crime which the Supreme Court has held in *People* v. *De Santiago* (1969) 71 Cal.2d 80 [76 Cal.Rptr. 809, 453 P.2d 353], to be insufficient to excuse noncompliance with section 844. The entry was unlawful, the evidence (including the admission by Kellotat) was the fruit of that illegal entry and was inadmissible. (*People* v. *Johnson* (1969) 70 Cal.2d 541 [75 Cal.Rptr. 401, 450 P.2d 865].) The motion to suppress was properly granted.

## II

We have set forth above the information about defendants that was possessed by the officers prior to their entry. If lawfully obtained, it, taken in connection with the statement of the neighbor, was enough to sustain an arrest. But what the officers testified they saw was not enough to sustain a conviction. Since it was not, it is unnecessary to decide whether or not the surveillance through the window by means of binocu-

---

[4]One officer yelled out: "Police Officers" concurrently with the entry. The People do not contend that this satisfied the requirements of section 844.

[5]It is argued that the officers feared that all narcotics would have been injected if they gave warning of their intent to enter and that, once injected, the evidence would have been "destroyed" within the meaning of *De Santiago*. In view of the testimony that the officers believed that Kellotat was a large dealer in narcotics, that suggestion had a minimum of validity; the trial court impliedly rejected it; the People have the burden, here of showing that such rejection was in error; we cannot say that it was. We point out, in addition, that the officers admitted a fact of common knowledge—namely, that observance of an addict shortly after injection of heroin gives objective proof of the fact of injection.

lars was an illegal invasion of defendant Kellotat's privacy.[6]
The order of dismissal is affirmed.

Jefferson, Acting P. J., and Dunn, J., concurred.

A petition for a rehearing was denied August 1, 1969, and appellant's petition for a hearing by the Supreme Court was denied September 17, 1969. McComb, J., was of the opinion that the petition should be granted.

___

[6]The People relied, at oral argument, on *People* v. *Berutko* (1969) 71 Cal.2d 84 [77 Cal.Rptr. 217, 453 P.2d 721]. But *Berutko* involved what an officer saw with his naked eye; it did not involve the question of how far there is a right to privacy against official observations that require more than normal sight.