[Crim. No. 18509. Second Dist., Div. Two. Feb. 25, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD EUGENE ROACH, Defendant and Appellant.

## COUNSEL

Albert D. Silverman, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert F. Katz, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**COMPTON, J.**—Defendant was charged by information in two counts with violation of section 11530 of the Health and Safety Code (possession of marijuana) and with violation of section 11555 of the Health and Safety Code (possession of an instrument used for the unlawful smoking of a narcotic). Defendant's motion to suppress the evidence (Pen. Code, § 1538.5) was denied. Thereafter defendant pleaded guilty to the violation of section 11530 upon the condition that any sentence imposed by the court be shorter than one year in the county jail. Defendant's second count was dismissed. Defendant was placed on probation for three years, after receiving a suspended one year sentence to the county jail. Defendant appeals pursuant to section 1538.5, subdivision (m), of the Penal Code from the court's probation order which is deemed, for the purpose of appeal, a judgment.

On January 14, 1970, at approximately 9 p.m. Officer Dickey of the Santa Barbara sheriff's office and four other officers arrested several persons in an apartment in Santa Maria, California, on dangerous drugs and narcotics charges. During the course of the arrest the officers uncovered a substantial amount of lysergic acid (LSD) and marijuana, plus assorted paraphernalia for the use of said narcotics. Approximately 15 or 20 minutes after the subject arrest had commenced and while some of Officer Dickey's fellow officers were in another part of the apartment, defendant knocked at the front door. Officer Dickey answered the door and the defendant "came into the room, the hallway." Officer Dickey identified himself, advised defendant that there was an arrest being made, and asked defendant for identification. Officer Dickey testified that when defendant started to reach for his pocket, he patted defendant down as a precautionary measure.

While conducting his "pat-down" search of defendant, Officer Dickey felt a "large, hard object" in the pocket of defendant's jacket. Officer Dickey removed the object which proved to be a brass doorknob with an alligator clip fastened thereto. It was determined that said object was a "crutch" which is a device used by persons smoking marijuana to hold the burnt portion of the marijuana cigarette so as to imbibe an optimum amount from the marijuana "roach." Officer Dickey thereupon placed defendant under arrest for violation of section 11555 of the Health and Safety Code. Thereafter defendant's pockets were thoroughly searched and were found to contain a plastic bag containing marijuana. Defendant was then advised that he was being arrested for possession of marijuana.

Defendant's appeal presents two basic issues. First, was Officer Dickey's

pat-down search violative of defendant's Fourth Amendment rights to freedom from unreasonable searches and seizures. Second, was there probable cause to arrest defendant and thereafter search his pockets.

The United States Supreme Court in *Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868], recognized the right of a policeman given certain conditions to make self-protective "frisk" searches of persons for weapons. The Supreme Court said: "Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. [Citations.] And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. [Citation.]" (*Terry* v. *Ohio, supra,* at p. 27 [20 L.Ed.2d at p. 909].)

The court declared that the determination as to whether an officer's pat-down search is reasonable represents a dual inquiry—"whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." (*Terry* v. *Ohio, supra,* at p. 20 [20 L.Ed.2d at p. 905].) Thus in justifying the particular intrusion "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (*Terry* v. *Ohio, supra,* at p. 21 [20 L.Ed.2d at p. 906].)

■ Our Supreme Court has said that in determining whether a "stop and frisk" is lawful "[t]here must be a 'rational' suspicion by the peace officer that some activity out of the ordinary is or has taken place . . . some indication to connect the person under suspicion with the unusual activity . . . [and] some suggestion that the activity is related to crime. [Citation.]" (*Irwin* v. *Superior Court,* 1 Cal.3d 423, 427 [82 Cal.Rptr. 484, 462 P.2d 12].) In the final analysis the courts in applying *Terry* to myriad permutations of police encounters with suspicious circumstances have sought to determine whether the officers' actions were reasonable and rational. (See *People* v. *Hubbard,* 9 Cal.App.3d 827 [88 Cal.Rptr. 411]; *People* v. *Adam,* 1 Cal.App.3d 486 [81 Cal.Rptr. 738].)

■ Applying these principles to the case at bar it is evident that Officer

Dickey's actions herein were precipitated by circumstances which reasonably warranted his frisk search of defendant.

Officer Dickey and his co-officers were, at the exact moment defendant presented himself, conducting an arrest at an apartment which was thought to be occupied by the major supplier of mescaline and "LSD" for the Santa Maria area. Officer Dickey testified that actual delivery of these unlawful drugs for the "street action" was made from this apartment.

Defendant walked into a part of the apartment occupied at that time by two other suspects who had not yet been handcuffed. Officer Dickey testified that one of the suspects had been difficult to control. Finally, there was no immediate, ostensible indication of defendant's purpose in being at the apartment which might have allayed Officer Dickey's fear that defendant presented a challenge to control of the suspects.

Officer Dickey stated that he had pat searched defendant because "at the time we were trying to get control of all suspects and we had them in different parts of the house and when [defendant] came into the house, he interrupted my two suspects and I didn't know what he was introducing into the case at that time. . . . I wanted to make sure he had no weapons on him."

It is clear that Officer Dickey did not have probable cause to arrest defendant prior to the frisk search. However, it is our opinion that where an officer is conducting a mass arrest at an apartment known to be the headquarters for the "street traffic" of dangerous drugs and where an unknown individual without immediately ostensible, innocent purpose introduces himself into such an arrest scene it is reasonable for the police officer to, as Officer Dickey testified, fear that his safety and the safety of the other officers was in danger. The few moments from defendant's appearance to the time Officer Dickey had pat searched defendant were critical to the safe completion of the arrest being conducted. There being no immediate indication that defendant was not a potential customer or partner of the arrested suspects Officer Dickey reasonably feared "complications."

Defendant's self-induced presence at an apartment where dangerous drugs were sold provided rational support for this belief. (See *People* v. *Henze*, 253 Cal.App.2d 986, 989 [61 Cal.Rptr. 545]; *People* v. *McGlory*, 226 Cal.App.2d 762, 764 [38 Cal.Rptr. 373].) To require an officer in similar circumstances to conduct an extensive interview to determine the exact nature of such an unknown quantity at such a critical moment without first conducting a pat search for weapons is unrealistic and could prove extremely dangerous.

We feel that Officer Dickey was sufficiently able to point to "specific and articulable facts which together with rational inferences from those facts" reasonably warranted his precautionary pat search for weapons.

Upon touching a hard object in defendant's coat Officer Dickey proceeded to extract the brass door knob from defendant's pocket. There was reason for Officer Dickey to believe that such an object could have been used for a weapon. (Contrast: *People* v. *Collins,* 1 Cal.3d 658, 662-663 [83 Cal.Rptr. 179, 463 P.2d 403]; *People* v. *Britton,* 264 Cal.App.2d 711, 717 [70 Cal.Rptr. 586].) Thereafter defendant was arrested for possession of narcotic paraphernalia. Officer Dickey, as an experienced narcotics agent, recognized that the door knob with attached alligator clip was a device used to smoke marijuana. This information gleaned as the result of a reasonable pat search was sufficient probable cause to arrest defendant and thereafter conduct a more thorough search of defendant. (*People* v. *Berutko,* 71 Cal.2d 84, 90-91 [77 Cal.Rptr. 217, 453 P.2d 721].)

The judgment is affirmed.

Herndon, Acting P. J., and Fleming, J., concurred.