[No. B054148. Second Dist., Div. Four. Jan. 24, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
PHILLIP CARLOS JARMON, Defendant and Appellant.

[No. B060842. Second Dist., Div. Four. Jan. 24, 1992.]

In re PHILLIP CARLOS JARMON on Habeas Corpus.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts IV, V, VI and VII.

1348

COUNSEL

Barbara Springer Perry, under appointment by the Court of Appeal, for Defendant, Appellant and Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Robert F. Katz and Sanjay T. Kumar, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WOODS (A. M.), P. J.—Appellant Phillip Carlos Jarmon was sentenced to 69 years to life in prison and ordered to pay $10,000 in restitution after a bifurcated trial pursuant to Penal Code section 1026[1] on multiple charges of murder, vehicular manslaughter and possession of a controlled substance. He contends in this appeal that the evidence is insufficient to demonstrate

---

[1]Penal Code section 1026, subdivision (a) provides in relevant part: "When a defendant pleads not guilty by reason of insanity, and also joins with it another plea or pleas, the defendant shall first be tried as if only such other plea or pleas had been entered, and in that trial the defendant shall be conclusively presumed to have been sane at the time the offense is alleged to have been committed. If the jury shall find the defendant guilty, or if the defendant pleads only not guilty by reason of insanity, then the question whether the defendant was sane or insane at the time the offense was committed shall be promptly tried, either before the same jury or before a new jury in the discretion of the court. In that trial, the jury shall return

malice, that he was not advised of and did not waive his right to a jury on the issue of his sanity, and that the sentence imposed by the trial court was incorrect in several respects.[2] He also contends on appeal and in a related petition for writ of habeas corpus, that his trial counsel's failure to introduce expert evidence of his lack of capacity to harbor malice at the guilt phase of his trial deprived him of his right to effective assistance of counsel. After review, we affirm.

I

It is undisputed that on August 12, 1989, appellant rear-ended a car, killing four people and injuring two others. It is also undisputed that at the time of the accident appellant was driving while under the influence of phencyclidine (PCP) and alcohol. The only issue which appellant disputed at trial was whether the evidence demonstrated that appellant harbored malice. He contends in this appeal that the evidence is insufficient to support the trial court's finding of implied malice.

■ Our review of this issue is limited to a determination of whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110]; *People* v. *Johnson* (1980) 26 Cal.3d 557, 576-578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) In making this determination we are required to view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People* v. *Johnson, supra,* 26 Cal.3d at pp. 576-577; *People* v. *Jones* (1990) 51 Cal.3d 294, 314 [270 Cal.Rptr. 611, 792 P.2d 643].) We recount the evidence in accord with these rules.

One month prior to the accident appellant was released from prison. One of the conditions of his parole required him to participate in antinarcotics testing. Within the two-week period prior to the accident appellant twice admitted to his parole officer that he had ingested drugs, specifically cocaine and PCP. Appellant's parole officer warned him that use of PCP carried the "extreme potential for violence" which might cause "injury to himself [and] others[.]" The officer told appellant that a third "dirty" test would result in

---

a verdict either that the defendant was sane at the time the offense was committed or was insane at the time the offense was committed. . . ."

[2]Specifically, appellant contends the trial court lacked the power to sentence him on the vehicular manslaughter counts because it failed to make a finding of guilt on those counts at the conclusion of trial, that the trial court erred in imposing consecutive sentences on each of the murder counts, that it was error to impose the upper term on vehicular manslaughter counts and that his presentence credits were improperly calculated.

his reincarceration. Appellant continued to use cocaine, marijuana, PCP and alcohol, sometimes in combination.

Appellant had been convicted of drunk driving in 1982 and knew it was dangerous to drive while under the influence of drugs. Despite this knowledge and the warning of his parole officer, he used drugs because he wanted to return to prison.

On the day of the accident he was observed by other drivers to be driving through heavy traffic on a city street at speeds estimated from 50 to 80 miles per hour. He sideswiped several cars before he rear-ended the victims' car. Immediately prior to the accident appellant approached a red stoplight. He sped toward the intersection, applying his brakes only a split second before the accident.

After the accident a witness observed appellant sitting in his car with an expression on his face that indicated a "don't care attitude."

When paramedics arrived, they found appellant to be unconscious and transported him to a hospital where he was treated for deep abrasions on his forehead. The emergency room doctor testified that appellant was agitated, combative and out of control. Appellant was not able to answer questions and did not know where he was. Appellant testified at trial that he had no memory of the accident or the events preceding it.

Several cases have upheld convictions of murder on facts involving vehicular homicide (see, e.g., *People* v. *Murray* (1990) 225 Cal.App.3d 734, 746-747 [275 Cal.Rptr. 498]) where the circumstances reasonably support the conclusion that a defendant does "an act with a high probability that it will result in death and does it with a base antisocial motive and with a wanton disregard for human life. [Citation.]" (*People* v. *Watson* (1981) 30 Cal.3d 290, 300 [179 Cal.Rptr. 43, 637 P.2d 279].) ▪ The difference between implied malice (which will support a charge of murder) and gross negligence (which will support a charge of manslaughter) is that malice "contemplates a subjective awareness of a higher degree of risk than does gross negligence, and involves an element of wantonness which is absent in gross negligence. [Citations.]" (30 Cal.3d at p. 296.) Therefore, "a finding of implied malice depends upon a determination that the defendant *actually appreciated* the risk involved . . . . [Citation.]" (Italics in original.) (30 Cal.3d at pp. 296-297.)

▪ Appellant contends that the evidence in this case is insufficient to sustain his convictions for second degree murder under this test because it

demonstrates merely that he "*should have* recognized the danger posed by his conduct," (italics in original) as opposed to the "*subjective awareness of risk*" (italics in original) which the law requires in order to demonstrate malice. ██ ██ Appellant argues, in essence, that the evidence showed he was so intoxicated as to be unconscious of his surroundings or his conduct.[3] In support of this argument he draws our attention to his testimony that he had no memory of getting into the car, had no idea where he was going, sideswiped other vehicles immediately prior to colliding with the victims and did not apply his brakes until the last second.

This argument, however, is a doubled-edged sword. The facts of this case also support the trial court's conclusion that appellant deliberately ingested drugs, thereby inducing his impaired state, with complete disregard for the safety of others.

Appellant apparently attempts to forestall this conclusion by arguing that he had no subjective awareness of the dangerous potential effect of PCP upon himself. He points out that he testified that he believed he could control himself while using PCP and had never before done anything "stupid" under the influence of PCP. This argument is unavailing. The trial court described appellant's state of mind as: " 'I know my conduct in the past hasn't been dangerous to others, but I also know that drugs can produce bizarre effects which can cause conduct which is dangerous to others. Knowing this, I don't care what the consequences are. I'm going to do drugs anyway and disregard the distinct possibility that I might kill somebody.' " Viewing the evidence in the light most favorable to the People, substantial evidence supports the trial court's finding that this state of mind demonstrated implied malice.

## II

 In his petition for a writ of habeas corpus, appellant asserts that if this court finds, as we have, that substantial evidence supports the trial court's finding of malice, then he was denied his right to effective assistance of counsel in that his trial counsel failed to introduce available expert evidence that he lacked the capacity to harbor malice.

Specifically, appellant complains that his trial counsel failed to introduce two psychiatric reports. One of the reports, prepared by Dr. Marshall Cherkas on February 12, 1990, concluded: "There seems to be no basis for

---

[3]Appellant's voluntary intoxication was not a defense to the charge of murder. (*People v. Saille* (1991) 54 Cal.3d 1103, 1114 [2 Cal.Rptr.2d 364, 820 P.2d 588].) It was, however, relevant to appellant's claim that he did not actually form the mental state constituting malice. (*Ibid.*) It was also relevant to show the overall circumstances from which appellant's state of mind could be inferred. (See *People v. Bennett* (1991) 54 Cal.3d 1032, 1038 [2 Cal.Rptr.2d 8, 819 P.2d 849] ["The jury should . . . consider all relevant circumstances, including level of intoxication, to determine if the defendant acted with a conscious disregard of the consequences rather than with mere inadvertence. [Citations.]"].)

suggesting that there was intent to harm or kill anyone at the time, but it seems quite clear that he used reckless abandon in the use of drugs and driving a car. . . . I believe his persistent drug abuse has made him a diminished individual for many years." The other, prepared by Drs. Donald L. Gibson and Bruce Gross on March 9, 1990, concluded: "[Appellant] did not appear to premeditate, deliberate or harbor malice at the time of the offenses. [¶] This defendant has a history that is consistent with a diagnosis of alcohol and drug dependency. It appears that he volitionally ingested drugs and alcohol and was intoxicated at the time of the accident. Although this does not absolve him of his responsibility, it does serve to diminish his intent at the time of the accident."

Respondent concedes that "defense counsel may have erred in failing to introduce evidence of the findings made by Drs. Gibson and Gross . . . ."[4] Respondent also concedes that appellant has demonstrated "that defense counsel had no tactical reason not to introduce this evidence at the guilt phase of the trial."[5] Respondent contends, however, that it is not reasonably probable that a different verdict would have been reached if the evidence had been introduced.

We agree. Pursuant to Penal Code section 28 appellant's alleged lack of *capacity* to harbor malice was irrelevant.[6] (*People* v. *Saille, supra,* 54 Cal.3d 1103.) Pursuant to Penal Code section 29, the expert's opinion as to whether he actually harbored malice was inadmissible.[7] Further, the trial court specifically found that appellant "consumed enough alcohol and/or drugs to impair his faculties on the day of the accident. . . ." For these reasons, it is clear that a different verdict would not have been reached if the evidence had

---

[4]Respondent does not discuss the report of Dr. Marshall Cherkas.

[5]The declaration of appellate counsel in support of the petition states: "Following my review of the psychiatric reports, I contacted petitioner's trial counsel, Deputy Public Defender Carl Kandel, by telephoned [*sic*] and asked him why he had not sought to introduce the psychiatric reports in evidence at the guilt phase of petitioner's trial. Mr. Kandel informed me that he could think of no reason for not introducing them, and he thought that he had in fact done so."

[6]Penal Code section 28, subdivision (a) provides, in relevant part, that "evidence of mental disease, mental defect, or mental disorder shall not be admitted to show or negate the capacity to form any mental state, including . . . malice aforethought, with which the accused committed the act. . . . [Such evidence] is admissible solely on the issue of whether or not the accused *actually* . . . harbored malice aforethought, when a specific intent crime is charged." (Italics added.)

[7]Penal Code section 29 provides in relevant part: "In the guilt phase of a criminal action, any expert testifying about a defendant's mental illness, mental disorder, or mental defect shall not testify as to whether the defendant had or did not have the required mental states, which include . . . malice aforethought, for the crimes charged. The question as to whether the defendant had or did not have the required mental states shall be decided by the trier of fact."

been introduced at the guilt phase. The error, therefore, is harmless error which does not require reversal. (*People* v. *Pope* (1979) 23 Cal.3d 412, 427 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)

### III

Appellant contends that he is entitled to a new hearing on the issue of his sanity because he did not expressly waive his right to have a jury determine that issue.[8] Respondent concedes the absence of an express waiver, but argues that grounds for reversal have not been demonstrated because appellant's waiver of jury trial prior to the guilt phase of trial effectively waived jury on both phases of the bifurcated trial.

Respondent asserts that the law in this regard is "well-settled." Respondent cites no case, however, which supports this assertion. The case upon which respondent relies, *People* v. *Marshall* (1930) 209 Cal. 540, 545-546 [289 P. 629], involved waiver of a speedy trial, not a jury waiver. In *Marshall* the California Supreme Court held, in relevant part, that the defendant waived his right to speedy trial on the issue of sanity when, at the time of his arraignment, he waived his right to trial within the statutory period. (209 Cal. at pp. 545-546.) The court explained: "We are of the opinion that the entire proceeding provided for under section 1026 constitutes but one trial, and therefore this waiver applied to each of the respective hearings upon the separate pleas." (209 Cal. at p. 546.)[9]

Although *Marshall* is not controlling on the facts before us, the "one trial" concept which it expresses is relevant to our analysis and has been the basis of other similar conclusions.

For example, in *People* v. *Villareal* (1985) 167 Cal.App.3d 450 [213 Cal.Rptr. 179], the defendant pled not guilty by reason of insanity to a murder charge in 1976. He waived his right to jury trial and stipulated that the court could decide the issue on written reports and the transcript of the preliminary hearing. The court found him not guilty by reason of insanity and ordered him committed to a state hospital until he could prove restoration of sanity. Seven years later, when the district attorney moved to set a

---

[8]As appellant points out, there is no support in the reporter's transcript for the notation in the clerk's transcript for June 15, 1990, that appellant personally waived jury trial on that date.

[9]The factual context of this holding was as follows: After a jury found the defendant guilty of the charges against him, he was sentenced to prison without any proceedings on his plea of not guilty by reason of insanity. On appeal from that judgment, the case was remanded for trial on the issue of insanity. Upon remand, a jury determined that the defendant was sane at the time of the crime, and judgment and sentence were again announced. In his second appeal, the defendant contended he had been deprived of his right to an immediate and speedy trial on the issue of his sanity.

trial date to determine the degree of the murder, the trial court denied defendant's request for a jury trial. On appeal he contended he was deprived of his right to jury trial on the issue of degree. The reviewing court responded: "Not so. He *waived* it in 1976. Trying the issue of alleged insanity of a person who is charged with a crime is not a separate trial, but merely a separate determination of one of the issues of the original charge. [Citations.] In the eyes of the law there is only one trial even though it is divided into two sections or states if insanity is pleaded as a defense. [Citation.]" (167 Cal.App.3d at p. 458, original italics.)

The above quoted language appears unnecessarily broad because there was only one issue to be decided, i.e., whether the defendant was sane at the time of the crime. Therefore the waiver of jury trial was specific to that issue. This fact distinguishes *Villareal* from the case before us.

The circumstances of this case are more akin to *People* v. *Berutko* (1969) 71 Cal.2d 84 [77 Cal.Rptr. 217, 453 P.2d 721]. In *Berutko* the defendant waived jury after entering a plea of not guilty to two drug counts and denying a prior conviction. The court found him guilty and found the prior conviction to be true. On appeal the defendant contended that his general jury waiver did not constitute a waiver of his right to jury trial on the prior conviction. The California Supreme Court, relying on the "one trial" principle, rejected this contention. The court explained: " 'It is settled that where a defendant waives a jury trial he is deemed to have consented to a trial of all of the issues in the case before the court sitting without a jury.' [Citation.]" (71 Cal.2d at p. 94.)

This holding has been followed in other cases involving a general waiver where prior convictions were alleged. (See *People* v. *Lizarraga* (1974) 43 Cal.App.3d 815, 819 [118 Cal.Rptr. 208]; *People* v. *Johnson* (1988) 199 Cal.App.3d 868, 872 [245 Cal.Rptr. 242]; cf. *People* v. *Luick* (1972) 24 Cal.App.3d 555 [101 Cal.Rptr. 252] [in which this court concluded that a jury waiver taken before prior conviction allegations were added did not extend to trial on those allegations].)

*People* v. *Sandoval* (1987) 188 Cal.App.3d 1428 [234 Cal.Rptr. 97], involved facts similar to the case before us. In *Sandoval* the defendant requested that trial on the issue of his guilt on charges of burglary be bifurcated from trial on the truth of alleged prior convictions. After this motion was granted the defendant waived jury. On appeal he contended his general jury waiver did not relieve the trial court of its duty to take a separate waiver of jury as to the truth of his prior convictions. The reviewing court rejected this contention, citing *People* v. *Berutko, supra,* 71 Cal.2d 84. (*People* v. *Sandoval, supra,* at p. 1430.)

Given the facts of the case before us, we believe these cases provide persuasive authority in support of the conclusion that appellant's waiver of jury trial on the issue of guilt extended to and included the issue of whether he was not guilty by reason of insanity.

The prosecutor who took the jury waiver informed appellant that he had "an absolute right to a trial by jury." He explained the difference between a jury trial and a court trial, and told appellant that he had a right to a jury trial on the issues of guilt or innocence and truth of the prior felony convictions alleged against him. Appellant did not object to the court trial or indicate, in any manner, that he was confused or misled. Instead, he expressly waived a jury on the issue of guilt and then sat quietly when his counsel subsequently stipulated to submit the issue of sanity on the evidence taken during the court trial. This scenario clearly indicates that the advice and waiver was intended to cover all trial issues. (See *People* v. *Casarez* (1981) 124 Cal.App.3d 641, 650 [177 Cal.Rptr. 451].)

■ We do not intend this conclusion to suggest that a jury waiver may be implied merely from conduct. There is no question that the waiver of jury on the issue of insanity must be expressed in open court by the defendant and his counsel. (*People* v. *Walker* (1948) 33 Cal.2d 250, 267 [201 P.2d 6].)
■ Nor do we intend to give support to those who may argue, as respondent does, that a defendant who waives jury trial on the issue of guilt is foreclosed from requesting a jury trial on the issue of sanity. If, at the time of the jury waiver on the issue of guilt, the defendant specifically demands a jury on his defense of insanity, the statutory language of Penal Code section 1026 does not prohibit this procedure. (See also 5 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Trial, § 2966(c), p. 3645.)

■ We conclude, however, relying on the "one trial" principle, that a defendant's waiver of jury on the issue of guilt extends to trial of both portions of a bifurcated trial pursuant to Penal Code section 1026 unless he specifically demands jury on the issue of sanity. Therefore, appellant fails in his contention that he did not waive jury on that issue.

IV-VII*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

The judgment as modified is affirmed. The trial court is directed to correct the abstract of judgment to reflect 555 days of presentence credit and to

*See footnote, *ante*, page 1345.

forward the amended abstract of judgment to the appropriate authorities. The petition for writ of habeas corpus is denied.

Epstein, J., and Cooper, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied April 16, 1992.

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.