**Percy C. REID, Appellant,**

v.

**UNITED STATES, Appellee.**

Nos. 3467, 3468.

District of Columbia Court of Appeals.

Argued May 4, 1964.

Decided June 26, 1964.

Bernard M. Dworski, for appellant.

Allan Palmer, Asst. U. S. Atty., with whom David C. Acheson, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before HOOD, Chief Judge, QUINN, Associate Judge, and CAYTON (Chief Judge, Retired).

CAYTON, Judge.

Appellant was convicted of violating District of Columbia Code 1961, § 33–402, unlawful possession of narcotics, and Code 1961, § 33–416a, narcotic vagrancy. He appeals on the ground that his motion to suppress should have been granted.

At the hearing on the motion to suppress, the government's evidence was that appellant, accompanied by a woman, rented a room in a tourist home operated by one Webster O'Connor. About an hour and half later O'Connor smelled a burning odor and upon investigation discovered it emanating from appellant's room. He knocked but received no reply, although he heard conversation within. He then heard a dresser being dragged across the room to the front or entrance door. There was a large storeroom next to appellant's room. O'Connor went into that room and through a crack in the door (which had been blocked by the dresser) saw appellant with a black stocking

around his arm. He also saw a needle and syringe on top of a television set, along with some bottle top cookers. After a time he saw appellant injecting himself. O'Connor assumed the burning odor was dope and called the police. Several hours later two policemen responded to the call. O'Connor met them at the front door and invited them in, told what he had seen, and took them to the storeroom from where they looked into appellant's room.

One officer testified he saw appellant, with a black stocking or handkerchief wrapped around his arm, in the process of injecting himself. He also saw some bottle top cookers on top of the television set, along with several capsules. Within two or three seconds, the officer was at appellant's door, knocked, said, "Police," and immediately went inside by turning the knob of the unlocked door, this consuming another second or two. He did not announce his purpose prior to entry, nor did he hear any strange noise prior thereto. Appellant dropped the needle and syringe to the floor and tried to kick them under the bed. He was then placed under arrest.

Police seized 67 unused capsules containing a white powder from appellant's right pants' pocket; 14 empty capsules with traces of a white powder, some from on top of the television set; and the needle and syringe approximately half full of a mixture of blood and other fluid from under the bed. Laboratory tests indicated that the powder in the 67 capsules, the traces of white powder in the 14 capsules, and the mixture in the syringe were heroin hydrochloride.

The officer further testified that from experience he knew these items to be narcotics paraphernalia and that he had this in mind before he went into the room to arrest appellant for a narcotics violation and to seize

the evidence. He also testified that before he entered he had not seen any fireplace or bathroom in the room, nor did he smell anything burning. He said that before entering the room he did not know in fact that it was not equipped with a bathroom or fireplace.[1]

Appellant testified he had rented a room from O'Connor and was told there were no cracks in the walls through which someone could look. He admitted having injected himself earlier in the morning with heroin and again as the officer was entering the room, and that he dropped the needle simultaneously with the entry. He denied having heard the officer say "Police" or hearing the knock before the entry

Two questions are to be answered:

(1) Did the view by the police into the room occupied by appellant violate the Fourth Amendment?[2]

(2) Was the arrest of appellant lawful under the criteria of 18 U.S.C.A. § 3109, since the officer failed to announce his purpose before entering?

■ The threshold question is whether the view by the officer through the crack in the door was an unreasonable search under the Fourth Amendment. Appellant contends that but for this view there would have been no probable cause to arrest him. He relies almost completely on McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948). In that case, police had McDonald under observation for two months on suspicion of lottery offenses. On the day of the arrest, a group of officers went to the house without an arrest or search warrant. While outside the house, one officer thought he heard an adding machine, a machine frequently used in numbers operations. Believing a numbers game was going

1. These are places where the evidence could be easily disposed of.

2. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and sei-

zures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S.Const. Amend. IV.

on in the house, an officer opened a window leading into the landlady's room and climbed through. He identified himself to her and admitted the other officers to the house. After searching the rooms on the ground floor, they proceeded to the second floor. The door to an end bedroom was closed, but one of the officers stood on a chair and looked through the transom. He observed both petitioners in the room, as well as numbers slips, money piled on the table, and adding machines. He yelled to McDonald to open the door and McDonald did so. Both petitioners were arrested and the officers seized the machines, a suitcase of papers, and money. The question was whether this was an unreasonable search and seizure prohibited by the Fourth Amendment.

The government there argued that, although it was an invasion of privacy for the officer to enter the landlady's room, it was a trespass which violated her rights under the Fourth Amendment, not McDonald's; that, so far as he was concerned, the officers were lawfully within the hallway, as much so as if the landlady had admitted them; that looking over the transom was not a search, for the eye cannot commit the trespass condemned by the Fourth Amendment; that since the officers observed McDonald in the act of committing an offense, they were under a duty to arrest him and the arrest being valid, the search incident thereto was lawful.

The Supreme Court said: "We do not stop to examine the syllogism for flaws. Assuming its correctness, we reject the result," and held that when under the circumstances the police should procure a search warrant, the failure to do so, except in the face of compelling reasons, will invalidate a search made without a warrant. Thus the holding

did not void any specific part of the police action, but rather the result.

In the case before us there is no doubt or dispute as to what happened. Appellant himself corroborated the government testimony that the police saw narcotics paraphernalia in the room and saw him in the act of injecting himself—an act at once harmful to the individual and illegal. The police being in the position of seeing a crime committed in their presence were under a statutory duty to arrest the offender immediately and without a warrant, Code 1961, § 4–140, since previous circumstances did not indicate, as in McDonald, a duty to procure a warrant.

As to the narrow question of whether the view itself was an unreasonable search and seizure,[3] it does not appear that McDonald is precedent for that point since the Supreme Court did not hold that the view by the officers amounted to a search. Moreover, a comparison of the cases before the Supreme Court on this issue leads to the conclusion that where there is not some actual physical interference to an individual's constitutionally-protected area, there is no violation of the Fourth Amendment.[4]

The next question is whether appellant's arrest was lawful, since a seizure following an arrest is valid only if the arrest is valid.

18 U.S.C.A. § 3109 provides:

"The officer may break open any outer or inner door or window of a house, * * * or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

---

3. Cf. People of State of California v. Hurst, 325 F.2d 891 (9th Cir. 1963), *cert. denied* Hurst v. McGee, 368 U.S. 843, 82 S.Ct. 70, 7 L.Ed.2d 41; Brock v. United States, 223 F.2d 681 (5th Cir. 1955).

4. Silverman v. United States, 365 U.S. 505, 506, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961);

On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952); Goldman v. United States, 316 U.S. 129, 62 S. Ct. 993, 86 L.Ed. 1322 (1942). See also Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925) where a view through a window preceding an arrest was not questioned.

It is agreed that this section is a codification of the common law of arrest and is in force in the District of Columbia. Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); Accarino v. United States, 85 U.S.App.D.C. 394, 179 F.2d 456 (1949).

The basic question is whether the facts in this case fall under the exception mentioned by the Supreme Court in Miller v. United States, supra. There the Court held that the facts did not show compliance with § 3109 and invalidated the arrest and subsequent search.[5] The Court noted that there were some state decisions holding that justification for noncompliance exists in exigent circumstances, for example, when officers in good faith believe that they or someone within is in peril of bodily harm, or that the person to be arrested is fleeing or attempting to destroy evidence. The Court then stated:

"But whether the unqualified requirements of the rule admit of an exception justifying noncompliance in exigent circumstances is not a question we are called upon to decide in this case.

\* \* \* \* \* \*

"The rule seems to require notice in the form of an express announcement by the officers of their purpose for demanding admission. The burden of making an express announcement is certainly slight. A few more words by the officers would have satisfied the requirement in this case. It may be that, without an express announcement of purpose, the facts known to officers would justify them in being virtually certain that the petitioner already knows their purpose so that an announcement would be a useless gesture \* \* \* \*"

Just last year, in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), a narcotics officer was held to have made an unlawful arrest when he broke into premises and arrested a man who started to run away, but this followed the officer's misrepresenting who he was and then announcing he was a narcotics agent. The Court reiterated the possible exceptions stated in Miller but found they did not exist.[6]

Both Miller and Wong Sun acknowledge that there may be cases with factual situations constituting exceptions.[7] We think this is such a case. The owner of the property smelled a burning odor and to protect his property investigated. Tracing the odor to the room occupied by appellant, he tried unsuccessfully to gain entrance. Appellant (or his companion), having moved the dresser to block the entrance door, exposed an

5. In that case the officers were led to defendant's apartment by a person arrested several hours earlier on a narcotics charge. They went to the door of his apartment, knocked, and (in a low voice) answered that they were police when the defendant asked who was there. The defendant then opened the door which was on an attached chain and asked the officers what they were doing there. Before either responded, he attempted to close the door. Thereupon the officers pulled the chain off the door and entered. (They did not have an arrest or search warrant.)

6. Later in the same term, in Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), the Court held an unannounced entry into the defendant's apartment to be legal under California law. A comparison of the California statute (cited in footnote 9 at page 38 of 374 U.S., 83 S.Ct. 1623) shows that it is very similar to 18 U.S.C.A. § 3109.

7. An examination of the cases decided by our United States Court of Appeals on the application of § 3109 criteria shows that we do not have a case in this jurisdiction where "exigent circumstances" justified noncompliance with the required announcement of authority and purpose. See Wayne v. United States, 115 U.S.App.D.C. 234, 318 F.2d 205 (1963), (where there were separate opinions on whether "exigent circumstances" were present but no holding); Masiello v. United States, 115 U.S.App.D.C. 57, 317 F.2d 121 (1963); Hair v. United States, 110 U.S.App.D.C. 153, 289 F.2d 894, 895 (1961); and Keiningham v. United States, 109 U.S.App.D.C. 272, 287 F.2d 126 (1960).

opening in the other door. Through that opening O'Connor saw a crime being committed and summoned the police. The police, as we have stated above, saw the illegal narcotics paraphernalia and actually saw appellant in the illegal act of making an injection. With a crime being committed in their presence, they proceeded as required by statute and made the arrest without a warrant. Our situation is similar to that in Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925), where officers looking through a window saw a narcotics transaction taking place and rushed in and arrested the participants and seized the contraband. The Court said there: "The legality of the arrests or of the searches and seizures made at the home of Alba is not questioned. Such searches and seizures naturally and usually appertain to and attend such arrests." We are aware that the above incident in Agnello was not the basis of any holding in the case, but even more important it was accepted by the Court and not challenged as irregular or illegal.

No case in this jurisdiction where § 3109 criteria were in issue involved a situation where the police saw the crime being committed. And no case in the Supreme Court or our Circuit Court of Appeals has ever held that there was not an exception to the requirements of § 3109. There are state decisions on "exigent circumstances" which are not at odds with those in this jurisdiction. See, for example, People v. Andrews, 153 Cal.App.2d 333, 314 P.2d 175 (1957), and People v. Ruiz, 146 Cal.App.2d 630, 304 P.2d 175 (1956), where officers saw what they reasonably believed to be a narcotics violation taking place and entered without complying with the California statute that is similar to § 3109, and the arrest and seizure were held to be proper. State v. Smith, 37 N.J. 481, 181 A.2d 761 (1962), cert. denied 374 U.S. 835, 83 S.Ct. 1879, 10 L.Ed.2d 1055, was another case upholding an arrest and search where an officer, by looking through a crack in the door, saw a narcotics violation being committed and then entered without announcement of authority and purpose.

In a case of this kind it is important to consider all the facts separately and in combination in order properly to judge their cumulative significance. Sheer literalness should not be invoked in applying the statute where it would lead to absurd results or to rules so rigid that police could never—or almost never—comply with them. Here the police were called in by the owner of property who, investigating what he feared was a fire, saw appellant committing a crime. Police saw appellant surrounded by various items immediately recognized as illegal narcotics accessories and also saw him in the actual commission of a crime. They had reason to believe that evidence would be destroyed, and there was indeed an attempt by appellant to hide the most tell-tale piece of evidence, as he admitted in his testimony. There was an immediacy in the situation which clearly amounted to "exigent circumstances" and authorized the police to proceed as they did. The trial court was justified in denying the motion to suppress.

Affirmed.