**Herbert L. BORUM, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 7260.**

District of Columbia Court of Appeals.

Argued Jan. 30, 1974.

Decided April 18, 1974.

Michael J. McCarthy, Washington, D.C., appointed by this court, for appellant.

William I. Martin, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., at the time the brief was filed, John A. Terry and Nicholas Gilman, Asst. U. S. Attys., were on the brief, for appellee.

Before REILLY, Chief Judge, and KELLY and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellant was found guilty of the possession of the implements of crime. D.C. Code 1973, § 22–3601. His pretrial motion to suppress evidence was denied; he challenges that denial. We affirm.

At approximately 11:20 p. m. one evening, four uniformed officers of the Metropolitan Police Department were on a routine patrol in the Whitelaw Hotel, located in northwest Washington. At the request of the owner, police officers regularly check the lobby, hallways, public bathrooms, and vacant rooms of the hotel.

As the four policemen were inspecting a hallway on the second floor, they came to Room 1–C. Its door was closed, but Officer William E. Hall noticed a crack or hole in it.[1] Officer Hall looked through the crack into the room, and saw a man "sitting on the bed and he had a tourniquet, like a belt, which he was attempting to use as a tourniquet. He had a syringe in his hand." Officer Hall told one of his partners, Officer John W. Hill, what he had seen.

Officer Hill then looked through the crack. At about that time, Lawrence Smith, who was to become a co-defendant, approached the officers from down the hall. Smith made it clear that he did not appreciate the officers' presence, and entered Room 1–C.

Officer Hill then climbed out the window of a nearby room, onto a roof over the lobby. From that vantage point, he readily could see into Room 1–C through its window, although it was partially covered by a shade. Hill could see four men inside the room. Two, one of whom was appellant Borum, had tourniquets on their arms and syringes in their hands. They were leaning over a bottle-top cooker on the dresser, drawing liquid from the cooker into their syringes. Officer Hill noticed that the door had been braced shut with a board. He sent word to the officers stationed in the hallway to enter the room. Unannounced, they broke in, and arrested the occupants.

Appellant argues that the officers violated his constitutional rights under the Fourth Amendment by looking through the crack into the room, and by breaking and entering the room without prior warning.[2]

The first prong of appellant's attack is based on the argument that the officers' act of looking through the crack constituted an unreasonable search. Prior to the Supreme Court's decision in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L. Ed.2d 576 (1967), our resolution of that question would have necessitated consideration of whether the observations through the crack effectively constituted an "unauthorized physical encroachment within a constitutionally protected area." Silverman v. United States, 365 U.S. 505, 510, 81 S.Ct. 679, 682, 5 L.Ed.2d 734 (1961). Compare Reid v. United States, D.C. App., 201 A.2d 867 (1964), with Whitley v. United States, 99 U.S.App.D.C. 159, 237 F.2d 787 (1956). In Katz, the Court departed from

1. He testified: "On the second floor, I happened to look through a little crack in the door which is where a lock had been, and evidently, the lock had broke out and there's a little bare hole there."

2. The record does not indicate who was the lawful tenant of the room. However, we do not consider that to be a determinative factor in this case.

an adherence to the concept of a constitutionally protected area, and analyzed the police surveillance techniques there involved from the broader perspective of a defendant's reasonable expectation of privacy.[3] 389 U.S. at 353; *see also* People v. Berutko, 71 Cal.2d 84, 77 Cal.Rptr. 217, 453 P.2d 721 (1969); State v. Smith, 37 N.J. 481, 181 A.2d 761 (1962), cert. denied, 374 U.S. 835, 83 S.Ct. 1879, 10 L.Ed.2d 1055 (1963).

The hallway on which Room 1–C is located is open to the general public. The crack in the door was readily apparent and accessible to anyone walking along that hall. The Supreme Court said in Katz (389 U.S. at 351, 88 S.Ct. at 511):

> [T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.

The Circuit Court for this jurisdiction has applied the "plain view" doctrine of Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), to police observations made through relatively small openings. As it noted in James v. United States, 135 U.S.App.D.C. 314, 315, 418 F.2d 1150, 1151, n. 1 (1969):

> That the policeman may have to crane his neck, or bend over, or squat, does not render the doctrine inapplicable, so long as what he saw would have been visible to any curious passerby.[4]

■ The police conduct involved here did not violate appellant's constitutional rights. The narcotics paraphernalia which was observed through the opening in the door was within the officers' plain view, and was seen from a place where they not only had a right to be, but where they were invited to be by the hotel's owner. Further, the observations which were made through the door provided the officers with probable cause for both the ensuing rooftop surveillance and the subsequent arrests.[5] *Cf.* Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

■ The officers' warrantless entry into Room 1–C was justified by the exigencies of the situation. Warden v. Hayden, *supra*; Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Appellant contends, however, that at the very least, the police had a duty to announce their presence before entering the room, and that their failure to have done so calls for reversal. This raises the question whether the District of Columbia's so-called no-knock law, D.C.Code 1973, § 23–591(c), properly was utilized here.[6]

Those portions of § 23–591 which are relevant here provide:

> (c) An announcement of identity and purpose shall not be required prior to such breaking and entry—
>
> \*  \*  \*  \*  \*  \*
>
> (2) if circumstances known to such officer or person at the time of breaking and entry . . . give him probable cause to believe that—
>
> > (A) such notice is likely to result in the evidence subject to seizure being

---

**3.** It was stated in *Katz*: "It is true that this Court has occasionally described its conclusions in terms of 'constitutionally protected areas,' . . . but we have never suggested that this concept can serve as a talismanic solution to every Fourth Amendment problem." 389 U.S. at 351, n. 9, 88 S.Ct. at 511.

**4.** *Cf.* McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Lorenzana v. Super. Ct. of L. A. Cty, 9 Cal. 3d 626, 108 Cal.Rptr. 585, 511 P.2d 33 (1973).

**5.** Police observations made through a window from a balcony or other private area may constitute an unreasonable search, if performed without probable cause. *E. g.*, Whitley v. United States, *supra*; People v. Myles, 6 Cal.App.3d 788, 86 Cal.Rptr. 274 (1970).

**6.** The no-knock provision was enacted as part of the District of Columbia Court Reform and Criminal Procedure Act of 1970; appellant does not challenge its constitutionality.

easily and quickly destroyed or disposed of,

(B) such notice is likely to endanger the life or safety of the officer or another person,

(C) such notice is likely to enable the party to be arrested to escape, or

(D) such notice would be a useless gesture.

Before they entered Room 1-C, the officers knew (1) that the occupants of the room appeared to be on the verge of injecting narcotics, (2) that at least one of them was aware of the nearby police presence, (3) that there was a sink in the room, and (4) that the door had been braced shut with a board. Officers Hill and Hall had substantial experience in narcotics cases, and had made numerous prior arrests at the Whitelaw.[7] In Ker v. California, *supra,* the Supreme Court held that the Fourth and Fourteenth Amendments do not forbid a no-knock entry which is authorized by state law. In drafting a no-knock provision for the District of Columbia, Congress essentially followed the rationale of *Ker,* and the legislative history of § 23-591(c)(2) makes it clear that the statute was intended to cover situations involving readily disposable narcotics.[8]

We conclude that the facts and circumstances known to the officers, considered in light of their experience, gave them probable cause to believe that any prior announcement would have been a useless gesture and was likely to have resulted in the destruction of the evidence. Moreover, it might have endangered the safety of the officers or the suspects. The no-knock entry was lawful, and the judgment below is affirmed.

---

7. Since a decision to enter without knocking typically must be made quickly, an officer's prior experience is relevant when reviewing the reasonableness of that judgment. *See* Ker v. California, *supra*; Henson v. State, 236 Md. 518, 204 A.2d 516 (1964); 116 Cong. Rec. 24471 (1970).

8. *E. g.,* S.Rep.No. 538, 91st Cong., 1st Sess. 13-15 (1969); H.R.Rep.No.907, 91st Cong., 2d Sess. 106-7 (1970); H.R.Rep.No.1303, 91st Cong., 2d Sess. 237 (1970) (House Statement of Managers accompanying Conference Report); 116 Cong.Rec. 24348-49, 24468-71, 24721, and 24889-92 (1970). *See also* Rauh and Silbert, Criminal Law and Procedure: D.C. Court Reform and Criminal Procedure Act of 1970, 20 Am.U.L.Rev. 252, 275-287 (1971).