Roland E. MATTHEWS, Appellant,

v.

UNITED STATES, Appellee.

No. 7935.

District of Columbia Court of Appeals.

Argued June 20, 1974.

Decided March 26, 1975.

John W. Dixon, appointed by this court, for appellant.

Edward D. Ross, Jr., Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, James F. McMullin, Roberta T. Eaton, and Daniel J. Bernstein, Asst. U. S. Attys., were on the brief, for appellee.

Before REILLY, Chief Judge, and KELLY and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellant was arrested with three other individuals in a room at the Whitelaw Hotel in northwest Washington, and was charged with carrying a pistol without a license. D.C.Code 1973, § 22–3204. His pretrial motion to suppress the gun as evidence was heard and denied. The motion was renewed at trial on the basis of allegedly newly discovered evidence, and again was denied.[1] Appellant, thereafter was convicted of the weapon charge.[2] He

---

1. Finding that appellant had made no adequate showing of newly discovered evidence, the trial court properly refused to reconsider the motion to suppress. See Jenkins v. United States, D.C.App., 284 A.2d 460, 463–64 (1971).

2. Subsequent to the original suppression hearing, an additional information was filed charging appellant with possession of the implements of crime. D.C.Code 1973, § 22–3601. He was acquitted of that charge.

challenges the denial of his motions to suppress. We affirm.

■ The trial court based its ruling on certain factual findings. Those findings are supported by the evidence, and are binding on us. D.C.Code 1973, § 17–305(a). The relevant facts necessarily are viewed in the light most favorable to the government.[3]

Metropolitan Police Department Officer Ronald Gates and his partner were in the Whitelaw in uniform looking for two individuals for whom arrest warrants were outstanding. Gates proceeded upstairs alone to seek information from a person who lived in one of the hotel's rooms. He knocked on the door of the room, and responded "Police" to an inquiry as to who was there. After a few seconds, someone opened the door about two feet. The officer then was able to see people inside the room in the process of injecting what he presumed to be narcotics.

As soon as he realized what was going on, Gates attempted to enter the room. He did not ask consent or state any purpose. He encountered some momentary resistance when the individual who had opened the door stepped in his path, but Gates brushed him aside and went in. As he entered, the officer observed appellant seated at a table with a pistol in his hand. Gates drew his revolver and said: "Freeze." He took the gun from appellant, and arrested him and three of the other men in the room.

Matthews argues that his motion to suppress should have been granted because the pistol was recovered as a consequence of Officer Gates' allegedly illegal entry into the room. We conclude that the entry was lawful and that the denial of the motion was proper.

■ A police officer may effect an arrest without a warrant if he has probable cause to believe that a person is committing or has committed an offense in his presence. D.C.Code 1973, § 23–581 (a)(1)(B). When Gates looked into the room after the door was opened, he saw people injecting some substance into themselves. An officer's observance of what is in plain view does not constitute a search.[4] See Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Borum v. United States, D. C.App., 318 A.2d 590, 592 (1974); James v. United States, 135 U.S.App.D.C. 314, 315, 418 F.2d 1150, 1151 (1969). The officer's observations gave him probable cause to believe that the individuals inside were injecting narcotics, thereby violating the law. He had both a right and a duty to seize the contraband and place the individuals under arrest. See Wheeler v. United States, D.C.App., 300 A.2d 713, 716 n. 9 (1973); cf. Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

Appellant does not quarrel with these concepts. Rather, he claims that the officer, faced with such circumstances, could not legally have entered the room without first announcing his purpose and waiting for either consent or a refusal to enter. Because the officer did not comply with those formalities, appellant argues that any entry was unlawful, precluding later use of the evidence seized. D.C.Code 1973, § 23–591(b).[5]

---

3. See, e. g., Hamling v. United States, 418 U.S. 87, 124, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Wray v. United States, D.C.App., 315 A.2d 843, 844 (1974). We therefore are precluded from considering appellant's conjectural hypothesis that the arrests in this case somehow were the result of a "setup."

4. There is no question but that Gates lawfully was present in the hallway. Cf. McDonald v.

United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948).

5. That statute reads as follows:
    Breaking and entry shall not be made until after such officer or person makes an announcement of his identity and purpose and the officer reasonably believes that admittance to the dwelling house or other building or vehicle is being denied or unreasonably delayed.

It is undisputed that Gates did not announce his purpose or ask permission before entering. Less clear is whether the officer's act of brushing aside the man who opened the door constituted a "breaking" within the meaning of § 23–591(b). Since § 23–591 applies only to an entry which involves a breaking, we must determine whether there was a breaking here in order to determine the applicability of the statute.

To put the problem in its proper context, we note our agreement with the following statements made in United States v. Bustamante-Gamez, 488 F.2d 4, 11 (9th Cir. 1973):

"[R]efusal of admittance" may not be necessary when even a mild showing of exigency is made and * * * in situations not involving closed or locked doors, it is relatively unimportant.

* * *

* * * * * *

The simple fact is that a homeowner has no right to prevent officers armed with a warrant or proper grounds to make a warrantless entry from entering his home. At the most, the "refusal of admittance" requirement gives him a few moments to decide whether or not he will open the door himself. * * *

The concept of breaking which is contained in our § 23–591 is derived from 18 U.S.C. § 3109 (1970), and our interpretation of the term arises from cases construing that statute. See Miller v. United States, 357 U.S. 301, 306, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). While police entry ultimately may not be refused, courts generally have divided entries into those which are permissive and those which constitute breaking. An officer is required to announce his identity and purpose before entering. Police entry through a closed but unlocked door has been held to be a breaking. Sabbath v. United States, 391 U. S. 585, 590, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); Keiningham v. United States, 109 U.S.App.D.C. 272, 275, 287 F.2d 126, 129 (1960). On the other hand, entry gained through a ruse has been held not to constitute a breaking. E. g., Smith v. United States, 357 F.2d 486, 488 n. 1 (5th Cir. 1966); Leahy v. United States, 272 F.2d 487, 490 (9th Cir. 1959), cert. dismissed, 364 U.S. 945, 81 S.Ct. 465, 5 L.Ed.2d 459 (1961).

Officer Gates readily acknowledged that his entrance was gained by overcoming some momentary resistance from the doorman. In light of that testimony, notwithstanding the fact that Gates did respond "Police" when asked who was at the door, we conclude that the entry constituted a breaking within the meaning of § 23–591. Cf. United States v. Harris, 140 U.S.App. D.C. 270, 277–80, 435 F.2d 74, 81–84 (1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 152 (1971).

The general rule that the police may not lawfully break and enter a home until making their identity and purpose known to those inside dates back to the common law maxim that "a man's home is his castle." [6] That rule has exceptions, however, specifically including those contained in § 23–591(c)(2) of the Code:

An announcement of identity and purpose shall not be required prior to such breaking and entry—

* * * * * *

(2) if circumstances known to such officer or person at the time of breaking and entry * * * give him probable cause to believe that—

(A) such notice is likely to result in the evidence subject to seizure being easily and quickly destroyed or disposed of,

(B) such notice is likely to endanger the life or safety of the officer or another person.

6. While it appears that the room was not appellant's, his standing to contest the validity of the entry has not been put in issue, and we do not consider that question See People v. Martin, 45 Cal.2d 755, 290 P.2d 855 (1955).

(C) such notice is likely to enable the party to be arrested to escape, or

(D) such notice would be a useless gesture.

■ We must determine whether this situation falls within one or more of the exceptions specified in § 23–591(c)(2). Recently, we had occasion to deal with another unannounced entry into a room at the same hotel. Borum v. United States, *supra*. We held the no-knock entry in *Borum* to be lawful under subsections (A) and (D) of § 23–591(c)(2). If the man who opened the door in this case had shut it before Gates could enter, the situation would have been virtually identical to that in *Borum*, and the officer would have been justified in forcing entry without further warning. The factual distinction between the two cases does not warrant a different result here.

Gates was an experienced police officer, familiar with narcotics and the extent of narcotics abuse at the Whitelaw. He knocked on the door of the room of a woman who was known to him, and a male voice answered. When the door was opened, the officer saw a group of people in the process of injecting presumed narcotics. Gates was familiar with the layout of the room and knew that it contained a sink, which would have permitted easy disposal of narcotics. He was in uniform, and could be certain that the doorman and any others who saw him would recognize him as a police officer.

Taking all these factors into consideration, we find that any further announcement by Gates before entering would have been a useless gesture. D.C.Code 1973, § 23–591(c)(2)(D). The doorman acknowledged at trial that he knew he "wasn't in church." Narcotics activity was being carried on openly inside the room, and

Gates' presence and his status as a police officer were obvious to all. It was apparent that he was entering to seize the criminal paraphernalia in view before him. This situation falls not only within the statute, but also within the Supreme Court's dictum in Miller v. United States, *supra*, 357 U.S. at 310, 78 S.Ct. at 1196:

> It may be that, without an express announcement of purpose, the facts known to officers would justify them in being virtually certain that the petitioner already knows their purpose so that an announcement would be a useless gesture.

*See* United States v. Wylie, 149 U.S.App. D.C. 283, 291–93, 462 F.2d 1178, 1186–88 (1972); Chappell v. United States, 119 U. S.App.D.C. 356, 358–59, 342 F.2d 935, 937–38 (1965).

■ Any unnecessary delay by Officer Gates in seizing the contraband would have increased the likelihood that it might have been disposed of or destroyed. This fact formed an additional basis justifying his swift reaction.[7] *Cf.* Kleinbart v. United States, 142 U.S.App.D.C. 1, 3, 439 F.2d 511, 513 (1970).

■ One final question necessitates comment. Appellant's case was severed from those of the other three individuals who were arrested with him and charged with possession of the implements of crime. D.C.Code 1973, § 22–3601. Appellant's counsel stated to us that the charges against the other three men were dropped subsequent to appellant's conviction. He argues that by dropping those charges, the government effectively admitted that Gates' entry was illegal, and that such a circumstance should vitiate appellant's conviction. However, the disposition of the other cases is irrelevent to our consideration of Matthews' appeal. Without speculating about the reasons behind the prose-

---

7. While we do not justify the officer's action by hindsight, we note that when he entered, appellant was sitting inside the room with his finger on the trigger of a loaded pistol. Any announcement of purpose thus might well have endangered "the life or safety of the officer or another person". D.C.Code 1973, § 23–591(c)(2)(B).

cutorial decision to drop those cases, we cannot consider such a decision to amount to an admission of police wrongdoing as far as appellant is concerned.

There being no error requiring reversal, appellant's conviction is

Affirmed.