John T. JONES, Appellant,

v.

UNITED STATES, Appellee.

No. 7369.

District of Columbia Court of Appeals.

Argued Dec. 19, 1973.

Decided April 22, 1975.

Rehearing and Rehearing en Banc Denied June 5, 1975.

---

Richard A. Levie, Washington, D. C., appointed by this court, for appellant.

William M. Brodsky, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., and John A. Terry and Nicholas S. Gilman, Asst. U. S. Attys., were on the brief, for appellee.

Before PAIR, YEAGLEY and HARRIS, Associate Judges.*

HARRIS, Associate Judge:

Appellant was found guilty of the possession of the implements of crime (narcotics paraphernalia) in violation of D.C. Code 1973, § 22–3601, and of the unlawful possession of marijuana.[1] *Id.*, § 33–402. Those convictions were based upon contraband which was seized through the execution of a search warrant. We are asked to hold the search warrant constitutionally deficient, and to conclude that the manner of its execution was violative of D.C.Code 1973, § 23–591. We affirm.

I

The warrant was obtained from a United States Magistrate for the District of Columbia. Its issuance was based upon an af-

---

* Judge Pair's status became that of a retired judge on April 14, 1974. *See* D.C.Code 1973, § 11–1502.

1. It appears that the implements of crime were a bottle-top cooker, syringes, and needles.

fidavit which was prepared by a veteran Metropolitan Police Department officer. The first paragraph of the affidavit stated that the officer had

> met with a reliable informant, this informant has proven reliable in at least 5 occasions in the past two months, all of which resulted in the arrest of narcotic violators and the seizure of narcotic drugs. This source stated that illicit narcotic drugs were being dispensed inside 1111 Mass. Ave. N.W. #308. This source of information further stated that it had illegally purchased illicit narcotic drugs in the past and that it was willing to purchase illicit narcotic drugs for the Third District Vice Unit.

The affidavit went on to describe an oft-repeated scenario. A controlled purchase of drugs from the apartment was arranged. The officer and the informant went to the apartment building. The informant was searched by the officer and found to have no money or narcotics on his person. The officer then gave the informant police funds, and watched him enter the building. On the informant's return a few minutes later, as described in the affidavit, the

> affiant then searched the source of information and found it [the informant] to contain a quantity of brown envelopes all of which contained a green plant material. The search also revealed the source of information to be free of any money.

The informant further told the officer that he had purchased the material from a particular person in that particular apartment, and a preliminary field test undertaken promptly reflected that the substance purchased was marijuana.

■ We conclude that the warrant survives attack on the grounds of an alleged Fourth Amendment deficiency. United States v. Ketterman, D.C.App., 276 A.2d 243 (1971); United States v. Thornton, 147 U.S.App.D.C. 114, 454 F.2d 957 (1971).

In so holding, however, we would comment particularly on one aspect of the argument advanced on behalf of appellant. The apartment house was a multi-storied structure with many units. Appellant contends that the warrant must be held to be invalid since the officer saw the informant enter the building, but could not attest to the informant's entry into Apartment 308.

Such a contention is without merit, for two reasons. The first is a practical one. Our agreement with appellant's contention would make apartment houses effectively off limits to officers seeking to enforce the narcotics laws. It would be wholly unreasonable—as well as self-defeating and dangerous—for us to impose a duty of surveillance of a particular apartment unit. We find no flaw in the officer's careful observation of the front door of the building rather than of the door of Apartment 308 itself.

■ Additionally, appellant's argument has been foreclosed by the Supreme Court in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Aguilar reaffirmed the proposition that an affidavit supporting a search warrant "may be based on hearsay information and need not reflect the direct personal observations of the affiant." 378 U.S. at 114, 84 S.Ct. at 1514. So long as the magistrate is sufficiently informed of the underlying circumstances which justify a belief in the informer's reliability and the underlying circumstances upon which the informer concluded that contraband was where he claimed it was, the informant's allegations require no independent corroboration. If we were to accept appellant's position, the next step, after requiring additional attestation as to the specific location of the contraband, would be to require independent corroboration of all other pertinent details before a warrant could issue. To follow such a course would be to vitiate Aguilar and other cases permitting reliable but uncorroborated information to support a warrant, and effectively

would render proven informers useless at this critical stage of crime detection and prevention.

## II

When the search warrant was executed, several police officers—including a female —went to the apartment. When they knocked on the door, someone responded: "Who is it?" The policewoman said: "Sheryl. Is John there?" The voice from within the apartment answered: "Wait a minute." Appellant then opened the door several inches. While "[appellant] was in the process of opening it", one male officer "pushed [it] open the rest of the way." Appellant "stepped aside" and all entered to execute the warrant. Just before or while entering, the officer who led the way announced: "Police officers; search warrant." [2]

Appellant contends that the police broke and entered the apartment in violation of D.C.Code 1973, § 23–591, by illegally announcing their identity and purpose as or after they entered rather than before.[3] That argument fails, since the record leads to the conclusion that no breaking occurred. In this case there is lacking even the modest resistance to the police entry which prompted us recently to find a breaking in Matthews v. United States, D.C.App., 335 A.2d 251 (1975).[4] While resistance (or lack thereof) is neither the sole nor a necessary criterion for determining whether a breaking has taken place, see Sabbath v. United States, 391 U.S. 585, 589–90, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968), other criteria propounded by various courts similarly support the conclusion of no breaking. For example, appel-

lant does not contend that he attempted to close the door on seeing the police standing at the threshold, nor is it alleged that he attempted in any other way to deny the police admittance to the premises. The record reflects that appellant, by stepping away from the door on seeing the police there, permitted rather than contested the entry. See, e. g., United States v. Beale, 445 F.2d 977 (5th Cir.), cert. denied, 404 U.S. 1026, 92 S.Ct. 697, 30 L.Ed.2d 676 (1971); Ng Pui Yu v. United States, 352 F.2d 626 (9th Cir. 1965); Keiningham v. United States, 109 U.S.App.D.C. 272, 287 F.2d 126 (1960).

Accordingly, we make the same type of a determinative holding of no breaking as was made by the court in United States v. Syler, 430 F.2d 68 (7th Cir. 1970). The court there stated (at 70):

[The officer] merely completed the operation voluntarily initiated by defendant. No attempt was made to bar his way and no force was applied in gaining entry.

See also United States v. Lopez, 475 F.2d 537 (7th Cir.), cert. denied, 414 U.S. 839, 94 S.Ct. 89, 38 L.Ed.2d 74 (1973); cf. Dickey v. United States, 332 F.2d 773 (9th Cir.), cert. denied, 379 U.S. 948, 85 S.Ct. 444, 13 L.Ed.2d 545 (1964). So holding, we need not consider the timing of the announcement by the police of their identity and purpose, since such an issue would become relevant only after a breaking has been established.

We find no error in the trial court's denial of appellant's motion to suppress. Accordingly, the judgments of conviction are

Affirmed.

2. When asked if there was any sort of chain on the door, the officer testified that he did not recall, but that if there was, it was not latched.

3. Section 23–591 provides in pertinent part:

    \*    \*    \*    \*    \*

    (b) Breaking and entry shall not be made until after such officer or person makes an announcement of his identity and purpose and the officer reasonably believes that

admittance to the dwelling house or other building or vehicle is being denied or unreasonably delayed.

4. As we noted in *Matthews*, since the concept of "breaking" in § 23–591 of the District of Columbia Code is derived from 18 U.S.C. § 3109 (1970), cases construing the federal statute provide appropriate guidance for our interpretation of the word.