Joseph D. Quinn, Jr., J.
Prior to the commencement of trial of this criminal action, in which defendants have been charged with, inter alia, the gang-rape of one woman and the unrelated gang-sodomy of another, the defense moved to challenge the lawfulness of the warrantless arrest of defendants in private premises and to suppress, as the tainted fruit of that arrest, evidence later seized in those same premises in a search conducted with the consent of one of the defendants.
After an evidentiary hearing and the presentation of oral argument, the motion was denied from the bench, with the understanding and consent of counsel that this written decision upholding the validity of the arrest would follow.
At the hearing, it developed that the rape victim, Elizabeth Santiago, had telephoned the New York City Housing Authority Police at about 1:30 or 2:00 in the morning of August 24, 1975, to report that, shortly before, at her Bronx apartment, she had been beaten, sexually assaulted and robbed by three youths. Several policemen responded to a radio run which had been sent out after receipt of the call. Upon arrival, the officers found this complainant lying on the ground in an injured condition near a police phone located outside of her apartment house on St. Ann’s Avenue near 137th Street. Standing by her was one of her infant daughters.
Mrs. Santiago was taken to Lincoln Hospital for examination and treatment. At the hospital, one of the officers, McLean by name, interviewed her and learned that her assailants were defendants at bar as well as a juvenile, who was later petitioned into Family Court. Other officers aided in the investigation until their tour of duty ended that morning.
Arriving at the South Bronx Housing Precinct House for day-shift duty that morning, Detective Gonzalez took up the investigation where the others had left off. On the basis of Officer McLean’s incident report, Gonzalez and Officer Haynes went to the home of the juvenile in the Bronx. Upon inquiry of this youth’s family, these officers learned that he was not at *787 home. They informed the family that he was wanted in connection with the rape and that he was in serious trouble.
Rafael Sostre, also known as "Lefty” and a brother of the juvenile, offered to assist the police in finding his brother. Eventually, and at about 11:00 on that morning of the 24th of August, 1975, Sostre took Gonzalez and Haynes to an apartment at No. 1055 Finlay Avenue in the Bronx. While the officers took positions on either side of the outer door of that apartment, Sostre knocked at this door. On inquiry from within, Sostre identified himself, saying "It’s me, 'Lefty’ ”, or words to that effect. The door was then opened by defendant Santiago or Soto, who apparently recognized Sostre’s voice and nickname, and the waiting officers entered the apartment with shields displayed and guns drawn and Gonzalez proceeded to arrest defendants Santiago and Chin and the juvenile whom they found within.
After giving defendants a preinterrogation warning (Miranda v Arizona, 384 US 436), Detective Gonzalez and Officer Haynes took the three to the precinct house. Following some questioning, defendant Santiago or Soto agreed to and did take Detective Gonzalez back to the Finlay Avenue apartment, where he aided the police in retrieving several items of personal property which were mentioned in Officer McLean’s report as having been taken from the complainant Elizabeth Santiago’s apartment.
In the course of the hearing, the complainant Elizabeth Santiago testified as to the events which prompted her to telephone her complaint to the police.
On oral argument following the completion of the hearing, both defense counsel contended that (1) Detective Gonzalez lacked probable cause to make a warrantless arrest of defendants, since his knowledge of their criminal conduct was derived solely from Officer McLean’s report — a hearsay source, (2) absent probable cause, there was no statutory authorization for the arrest, and (3) even if the right to make such an arrest existed, the method employed to gain entry into private premises violated the Fourth Amendment.
Defendants’ probable cause arguments find no support in statutory or decisional law.
The New York arrest statutes expressly permit the issuance of a warrant of arrest predicated upon hearsay, provided that such evidence affords the issuing magistrate a reasonable basis for the belief that the person sought has committed a *788 crime. (Cf. CPL 100.15, subd. 1; CPL 120.20, subd 1.) Similarly, in order to be entitled to effect a warrantless felony arrest, a police officer need only to be possessed of apparently reliable information, sufficient to lead a person of ordinary intelligence, experience and judgment to believe that there is a reasonable likelihood that an individual has committed a felony. This information may include hearsay or it may consist of hearsay. (Cf. CPL 70.10, subd 2; CPL 140.10, subd 1, par [b].)
In People v Lypka (36 NY2d 210), the New York Court of Appeals held that a hearsay source (there, an interstate police radio bulletin) alone supplied presumptive probable cause for a warrantless motor vehicle search and an arrest of defendants founded upon the fruits of that search. That court went on to say, however, that, in the face of á motion to suppress, presumptive probable cause must be buttressed by reliable, nonhearsay evidence.
Of particular relevance here is the Lypka court’s observation that (p 215) "it should be noted that the information that would furnish probable cause for a warrantless search would furnish as well reasonable cause for a warrantless arrest”.
At bar, when it came to the suppression hearing, the People bolstered the hearsay police report of Officer McLean, relied iipon by Detective Gonzalez, with the testimony of the complaining witness Elizabeth Santiago, thus adequately demonstrating, by nonhearsay evidence, that Gonzalez had reasonable cause to arrest defendants here without a warrant on the morning of August 24, 1976.
To a degree, defendants’ Fourth Amendment claim poses a question, which as an abstract proposition of constitutional law, was left unanswered by the United States Supreme Court in United States v Watson (423 US 411, 418, n 6), Gerstein v Pugh (420 US 103, 113 n 13) and Coolidge v New Hampshire (403 US 443, 474-481). That unsettled question is whether or under what circumstances an officer must obtain a warrant before he may lawfully enter a private place to effect an arrest.
It might well be presumptuous of a court at nisi prius to essay an answer to this question were it not for the facts that (1) Mr. Justice White, writing for the majority in Watson (supra, pp 417, 418) noted reassuringly, citing Gerstein, that the Supreme Court" 'has never invalidated an arrest supported by probable cause solely because the officers failed to secure a *789 warrant’ ” and (2) existing statutes and cases seem to point out the way to a resolution of that aspect of the question which is raised by the facts of the instant case.
Our Legislature has expressly authorized police entry of private premises for the purpose of making a warrantless arrest, if the arresting officer reasonably believes that a suspect is present therein. (Cf. CPL 140.15, subd 4.) Absent exigent circumstances, the officer need only give or make a reasonable effort to give notice of his authority and of his purpose before entering to effect the arrest. If the officer reasonably believes that prior notice will result in the escape of the suspect, the destruction of evidence, or that it will endanger his life or safety or that of another person, he may dispense with such notice and he may enter by breaking, if necessary. (Cf. CPL 120.80, subds 4, 5.)
In this case, exigent circumstances were not shown, nor did the police announce themselves before entering the Finlay Avenue apartment to arrest defendants. Nor was their entry accomplished by "breaking”, in the conventional sense of the word. Instead, the officers used "Lefty”, the brother of the juvenile in the apartment, as a decoy to lure or trick defendants into opening the apartment door so that they might enter. The broad question, then, is whether police entry into private premises by trick or ruse or deception to execute a warrantless arrest amounts to an illegitimate "breaking” which violates CPL 140.15 (subd 4) and CPL 120.80 (subds 4, 5), and, more importantly, the Fourth Amendment.
To bur way of thinking, this question must be answered in the negative. There is a considerable body of Federal case law which holds that a ruse entry does not constitute a "breaking”. (Cf. Sabbath v United States 391 US 585, 590 n 7; Dickey v United States, 332 F2d 773, cert den 379 US 948; Leahy v United States, 272 F2d 487, cert granted 363 US 810, dsmd by stipulation 364 US 945; Smith v United States, 357 F2d 486; United States v Syler, 430 F2d 68; Jones v United States, 304 F2d 381; United States v Phillips, 497 F2d 1131; Matthews v United States, 335 A2d 251 [DC].)
But, there remains a narrower question to be resolved. That is whether the officers here had probable cause to believe that the suspects were in the Finlay Avenue apartment at the time that they entered by ruse. The Phillips case (supra) stands too for the proposition that an officer must have probable cause to believe that the person he is attempting to arrest, with or *790 without a warrant, is present in a particular premises at the time in question before that officer can legitimately enter the premises by ruse or by any other means.
This court is of the belief that Detective Gonzalez and Officer Haynes had good reason to believe that the brother of one of their suspects, willing to co-operate with them for the good of his sibling, would lead them to the place where all of the suspects were hiding. To an extent which is sufficient to demonstrate that the officers were justified in relying on the accuracy of "Lefty’s” information as to the whereabouts of the suspects, the record of the suppression hearing bears this out.
"Lefty” Sostre was called as a witness for the defense at the hearing. On direct examination, he was asked what occurred at the time that he arrived with the officers at the building at No. 1055 Finlay Avenue, where the apartment in question was located. He responded by saying that, when they reached the ground floor of that building, he asked the officers if he might not use the intercom to call upstairs to the apartment to let the youths know that they were coming up. He stated that Detective Gonzalez refused to allow him to do so and that he then went upstairs to the apartment with the officers.
On the strength of all of this, the court is of the view that this narrower question must be answered in the affirmative. Thus, the ruse entry is upheld in all respects.
Accordingly, defendants’ challenge to the legality of the warrantless arrests here is rejected.