[Crim. No. 42276. Second Dist., Div. Five. Dec. 16, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
THEODORE C. SCHWEITZER, Defendant and Appellant.

COUNSEL

Edward J. Horowitz, under appointment by the Court of Appeal, and Michael A. Aronoff for Defendant and Appellant.

Ira Reiner, City Attorney, Jack L. Brown and Greg Wolff, Deputy City Attorneys, for Plaintiff and Respondent.

OPINION

STEPHENS, Acting P. J.—Defendant was convicted of reckless driving (Veh. Code, § 23103). His appeal was transferred to this court from the appellate department of the superior court pursuant to rule 62(a), of the California Rules of Court.

The facts are these:[1] while on routine patrol, with a fellow officer, Los Angeles Police Department Officer Souza observed a motorcycle traveling 55 miles per hour in a 25 mile per hour zone. The motorcycle did not have a rear view mirror. Souza pursued the motorcycle, which increased its speed to 60 miles per hour while traveling through a 35 mile per hour zone. At one point Souza clocked the motorcycle at 75 miles per hour in a 35-mile zone. Souza observed that the motorcycle failed to stop for 2 boulevard stop signs. While

---

[1] The record on appeal consists of a proposed statement on appeal which is certified by the trial court and augmented by the reporter's transcript of the proceedings in the municipal court. To the extent that the facts are in conflict, we recite them as they appear in the transcript.

Souza was in pursuit, but some distance behind the motorcycle, the driver stopped to let off its passenger, Ingrid Wenzel. The motorcycle then sped off, eluding the officers' pursuit.

After losing sight of the motorcycle, Souza returned to the intersection where Wenzel had been let off and found her still there. Souza testified, in essence, that Wenzel asked if she was in any trouble, and that he told her that would depend on whether the driver was fleeing because he had committed some criminal act, whether the motorcycle was stolen, and whether she had anything to do with his fleeing. Souza told Wenzel that he might have to take her to the police station to find these things out, but he did not threaten her with arrest. He further testified that Wenzel was worried because she did not want her parents to find out about the incident, that she was very angry with the driver for having placed her in the position she was in, and that she was fully cooperative with the officer throughout his interview with her. She identified defendant by name as the driver of the motorcycle. She did not know defendant's address, but knew where his house was located and led Souza and other officers to it. Afterwards two police officers took Wenzel home, as she had no other means of transportation.

Wenzel, by contrast, testified that when the officer first approached her, she asked him if he had caught defendant, and the officer immediately told her that she was under arrest as an accomplice. She was very frightened because she had never before had any problems with police. She further testified that the officer implied that if she did not give him the information he wanted, she would be taken to the police station. She was scared that she would be taken into custody, scared about her parents' reaction if that happened, and would have "done anything to get out of this situation." It was in this state of mind that she told the officers defendant's name and showed them to his home.

Defendant was not at home when Wenzel took the officers to his house. He was arrested the following day when Souza stopped him for driving a motorcycle without a rear view mirror. Souza thought the motorcycle resembled the one which had evaded him the night before. He asked to see defendant's identification and recognized the name on it as the one Wenzel had given him the previous night.

Defendant moved to dismiss the charges against him and to suppress both Wenzel's statements to Souza and her testimony at trial. Based upon the conflicting testimony described above, and observation of Wenzel's demeanor, the trial court found that Wenzel was unlawfully coerced by the fear of a threatened unjustifiable arrest to identify defendant as the driver of the motorcycle, and that defendant had standing to challenge the admissibility of the coerced statements. (*People* v. *Varnum* (1967) 66 Cal.2d 808, 813 [59 Cal.Rptr. 108,

427 P.2d 772].) As a result, the trial court suppressed Wenzel's out-of-court statements identifying defendant. The court ruled, however, that the use of illegal means to apprehend a defendant does not require dismissal of the charges against him (*People* v. *Valenti* (1957) 49 Cal.2d 199, 203 [316 P.2d 633]), and further ruled that Wenzel could testify at trial. Wenzel did so, identifying defendant as the driver of the motorcycle on the night in question. (Souza was not able to identify defendant based on his observations that night.)

On appeal defendant contends that Wenzel's presence in court and her trial testimony were both the fruit of Souza's unlawful conduct and that her trial testimony, therefore, should have been suppressed. We find that the trial court correctly analyzed and decided the case under then existing law.[2]

Starting from the trial court's factual finding that Wenzel was unlawfully coerced into revealing defendant's identity to Souza, and proceeding from there to the proposition that defendant's arrest was the result of exploiting that illegally obtained information, it is still well settled that an illegal arrest does not confer immunity from prosecution on a defendant. (*People* v. *Moore* (1968) 69 Cal.2d 674, 681 [72 Cal.Rptr. 800, 446 P.2d 800]; *People* v. *Valenti, supra,* 49 Cal.2d 199, 203.)

While Officer Souza lacked authority to unlawfully threaten Wenzel in order to get her to disclose defendant's identity, he was well within his rights, and in fact obligated by his duty as a law enforcement officer, to seek to interview Wenzel and secure her voluntary cooperation as an eyewitness to a crime. There is no showing made, and defendant does not contend, that Wenzel declined to identify herself or that her identity was obtained through coercion. Her presence in court was not the result of unlawful coercion and cannot be suppressed. To hold otherwise would create the altogether anomalous result that a defendant, whose identity was learned through coercion, could be haled into court, but the witness, whose identity was properly obtained, could not be. The law should not promote such sophistry.

Furthermore, although the officer in the field lacked authority to compel the witness' cooperation, once the complaint against defendant was filed, the court had the (subpoena) power to compel the witness' presence at trial and the (contempt) power to compel her nonself-incriminatory testimony. The existence of these powers not only attenuated the taint of Souza's coercive conduct, they rendered Souza's conduct irrelevant with respect to Wenzel's trial

---

[2]It is, therefore, unnecessary for us to consider whether, under the recently enacted initiative measure (Proposition 8 on the June 1982 ballot), defendant would have standing to challenge the violation of Wenzel's constitutional rights, and whether Proposition 8 is applicable to cases tried prior to its enactment but not yet final on appeal.

testimony.[3] Ipso facto, Wenzel's voluntary trial testimony was admissible.[4] Defendant's constitutional rights, vicarious and otherwise, demanded no more than the suppression of Wenzel's coerced out-of-court statements.

The judgment is affirmed.

Ashby, J. and Hastings, J., concurred.

Appellant's petition for a rehearing by the Supreme Court was denied March 16, 1983.

---

[3] It goes without saying that Wenzel's ability to identify defendant was in no way dependent upon Souza's coercive behavior.

[4] The parties both cite *United States* v. *Crews* (1980) 445 U.S. 463 [63 L.Ed.2d 537, 100 S.Ct. 1244], and *People* v. *Terensinski* (1982) 30 Cal.3d 822 [180 Cal.Rptr. 617, 640 P.2d 753], as supportive of their respective positions. Neither case is apposite as they both involved situations in which the defendant's rights, not those of the witness, were violated. To the extent that they may be somewhat analogous, in both cases the witness was allowed to testify at trial.