Opinion
SHABO, J.
—Following a trial by jury defendant was convicted as charged of burglary, in violation of Penal Code section 459 (count I) of unlawfully carrying a loaded firearm while in a public place, in violation of Penal Code section 12031, subdivision (a) (count II), and of unlawfully carrying a con *Supp. 25 cealed firearm upon his person, in violation of Penal Code section 12025, subdivision (b) (count III). The court sentenced the defendant to serve one year in the county jail as to count I, six months consecutive to that sentence on count II, and to six months to run concurrently with the sentence imposed on count II for the offense charged in count HI. Defendant appeals and raises several contentions, only one of which is dispositive.
Prior to trial, a defense motion under section 1538.5 of the Penal Code was heard. The purpose of the motion was to suppress testimony regarding in-field identifications of the defendant made while he was in police custody, and to suppress in-court identifications of the defendant. The grounds of the motion appear to have been that these identifications were the fruit of an illegal arrest made without a warrant and without probable cause. The defense also sought to suppress the gun seized by the police.
Facts
The Penal Code section 1538.5 hearing, unlike the trial itself, was not reported. However, a settled statement on appeal was furnished with regard to the evidence presented at the hearing. According to the settled statement, testimony was offered at the hearing by Joanne Presgraves and by Carlos Morazan.
Ms. Presgraves testified that on June 5, 1983, while she was employed as a sales clerk at the “Hats ’n Things” store in Redondo Beach, two black men and two black women entered her store. Both men wore blue jogging suits, outfits that Ms. Presgraves said were not “unusual.” The four individuals remained in the store where they chose various items for purchase. Each selected and brought items to the counter where Ms. Presgraves was stationed. One of the men (not the defendant) handed the witness a Visa credit card in order to pay for them. The card appeared to be valid; nonetheless, because of store policy, Ms. Presgraves called to verify the card. She was told that it was not valid. When she told the man who had presented the card to her that there was a “problem,” he grabbed the card and ran out of the store. His three companions followed, but left their merchandise behind. Ms. Presgraves followed the people out of the store, saw a man whom she identified as the defendant stop about 50 feet away with one of the two women. The man who had presented the card, along with the other woman, kept running and then disappeared from view. The defendant and the woman with him then left as well and disappeared into a parking structure.[1]
*Supp. 26 Returning to the store, Ms. Presgraves called the police and described what had happened. She also described the two men as “male Negroes wearing blue jogging suits.” Sometime later she was taken by a police officer to the vicinity of the Marina Theatre, about two blocks away, where she saw the defendant in police custody and identified him as one of the men who had been in the store earlier.
Mr. Morazan testified that he had seen a man run by him carrying a bag. Mr. Morazan was taken to the theater by a police officer and was also shown the defendant, who was in police custody. The witness identified the defendant as the man who had run by him earlier.
According to the settled statement on appeal, there was no warrant for the defendant’s arrest. Both identifications followed his arrest and were the result of the single-person showup. There was no corporeal or photographic lineup.[2]
Discussion
Once it is established that the challenged search or seizure was conducted without a warrant, the burden of justification falls upon the prosecution which must establish, by evidence, an exception to the warrant requirements of the Fourth Amendment in order to establish the legality of the search or seizure. (People v. Laiwa (1983) 34 Cal.3d 711, 725 [195 Cal.Rptr. 503, 669 P.2d 1278]; Badillo v. Superior Court (1956) 46 Cal.2d 269, 272 [294 P.2d 23].)
Similarly settled is the principle that the prosecution cannot meet its burden by supplying a silent record with regard to the issue of justification; to carry its burden, the prosecution must present affirmative evidence manifesting constitutionally sufficient reason for the search or seizure. (People v. Burke (1964) 61 Cal.2d 575, 578-580 [39 Cal.Rptr. 531, 394 P.2d 67]; cf. People v. Berutko (1969) 71 Cal.2d 84, 89-90 [77 Cal.Rptr. 217, 453 P.2d 721].)
In the instant case the record of the suppression hearing is completely silent as to what, if any, information was possessed by the police at *Supp. 27 the time that the defendant was taken into custody and held for the in-field showups. We therefore are unable to ascertain from the present record that the People met their burden of justification, thereby rebutting defendant’s prima facie showing that defendant’s warrantless seizure and that of the gun were unlawful. (See People v. Laiwa, supra, 34 Cal.3d 711; cf. People v. Douglas (1969) 2 Cal.App.3d 592, 594-595 [82 Cal.Rptr. 718]; see, also, People v. Berutko, supra, 71 Cal.2d 84.)
With regard to the issue of attenuation, as with warrantless searches and seizures, the prosecution has the burden of proof, once the primary illegality of the search or seizure is shown. (Brown v. Illinois (1975) 422 U.S. 590, 599-600 [45 L.Ed.2d 416, 424-425, 95 S.Ct. 2254]; People v. Superior Court (Sosa) (1982) 31 Cal.3d 883, 892, fn. 5, 894 [185 Cal.Rptr. 113, 649 P.2d 696]; People v. De Vaughn (1977) 18 Cal.3d 889, 897 [135 Cal.Rptr. 786, 558 P.2d 872]; see People v. Teresinski (1982) 30 Cal.3d 822, 832-838 [180 Cal.Rptr. 617, 640 P.2d 753]; People v. McInnis (1972) 6 Cal.3d 821, 824-831 [100 Cal.Rptr. 618, 494 P.2d 690].) The instant record, however, is silent as to any evidence presented by the People or findings made by the trial court on this issue; nor are we able on this inadequate evidentiary record to imply findings necessary to support the trial court’s order denying the motion to suppress. (Cf. People v. Reagan (1982) 128 Cal.App.3d 92, 101 [180 Cal.Rptr. 85].) In the absence of evidence of attenuation, we are unable to conclude that the in-field and in-court identifications were untainted by the unsupported seizure of appellant. (People v. Superior Court (Sosa), supra, 31 Cal.3d 883; People v. Teresinski, supra, 30 Cal.3d at p. 832; People v. Sesslin (1968) 68 Cal.2d 418, 426-430 [67 Cal.Rptr. 409, 439 P.2d 321]; People v. Stoner (1967) 65 Cal.2d 595, 602-603 [55 Cal.Rptr. 897, 422 P.2d 585]; cf. United States v. Crews (1980) 445 U.S. 463, 471 [63 L.Ed.2d 537, 545-546, 100 S.Ct. 1244]; People v. Schweitzer (1982) 138 Cal.App.3d 204, 207 [187 Cal.Rptr. 696].)[3]
Finally, the record of the suppression hearing is silent concerning the factual and legal justification for the seizure of the gun. We are similarly compelled under the foregoing authorities to conclude that its seizure was prima facie invalid.[4]
*Supp. 28 That the error in the case at bench of admitting the identification evidence and the gun was prejudicial under the reasonable doubt standard of Chapman v. California (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065] is manifest: As to the burglary offense charged in count I, the evidence merely showed that defendant, accompanied by another man and two women, entered the store, chose various items for which the other man was going to pay by means of a counterfeit Visa card, and that all of the individuals ran out of the store after the sales clerk, who had attempted to verify the card, informed the man presenting it that there was a “problem.” Aside from the evidence of flight and defendant’s possible exercise of constructive dominion over a shopping bag possessed by one of the women whom he later told to “drop it,” the trial record contains no other evidence that defendant had entered the store with the requisite intent to commit a theft or with the intent to aid and abet the theft commission.[5]
 With regard to the gun charges alleged in counts II and III, the only evidence that defendant was in possession of the gun was the testimony of Mr. Morazan that defendant, whose face he had seen for perhaps no longer than 10 seconds, had run past the witness after bumping him from behind, and that defendant on the street was carrying a white paper bag. Although the evidence of Ms. Presgraves tending to connect defendant to the valise in which Officer Sturgeon had found the weapon near which was a white Hickory Farms bag,[6] did implicate defendant with commission of the offenses charged, such testimony in itself was weak because both the valise and bag had been discarded, none of the People’s witnesses particularly described the valise so that we might infer that it was distinctive, and defendant was not found in actual possession of the valise or bag when the gun was discovered.
*Supp. 29 The judgment of conviction is reversed.[7],[8]
Reese, P. J., and Bernstein, J., concurred.

As reflected in the settled statement, the suppression hearing testimony of Ms. Presgraves is not consistent with her trial testimony at this point. However, the variance is immaterial to our decision.

The settled statement does not reflect, as does the docket sheet of the Penal Code section 1538.5 proceedings, that an additional prosecution witness, Mark Sturgeon, also testified at the hearing. What Mr. Sturgeon’s testimony was, we do not know. Presumably he is the same individual who later testified at trial that he was a police ofiicer, employed by the City of Redondo Beach, who had received a radio call on June 5, 1983, at approximately 8:11 p.m., and was flagged down by Mr. Morazan. According to the trial testimony this witness, with the assistance of Mr. Morazan, discovered a loaded Smith & Wesson revolver inside a valise, which was lying on the ground next to a white shopping bag inside of which were food items from Hickory Farms. The trial court denied the motion to suppress.

In this connection the record is clear that Mr. Morazan saw the defendant hurriedly pass him; defendant was carrying a bag, which at trial the witness testified was white paper. At the trial the witness also testified that these events occurred at 7:15 p.m. in the early evening. The witness did not see “physically” what defendant did with the bag. On cross-examination Mr. Morazan said that he saw the man’s face for “three seconds at the most” from the time that defendant bumped into Mr. Morazan and “ten seconds until the time it took me to identify him.” Ms. Presgraves’ suppression and trial testimony concerning the details from which she could identify defendant is also wanting in these particulars.

The evidence at trial would appear to show that seizure of the gun might have been justified on an abandonment theory. (See Texas v. Brown (1983) 460 U.S. 730, 738, fn. 4 [75 L.Ed.2d 502, 511, 103 S.Ct. 1535].) However, no evidence at the suppression hearing was presented concerning the gun.

Defendant claims that the constitutional protection against double jeopardy bars his retrial on the burglary charge because the prosecution assertedly failed to adduce sufficient evidence to maintain his conviction at the trial. We disagree. Although the prosecution’s evidence against him was concededly weak, we must view it in the light most favorable to the People; so viewed, we cannot say that no rational trier of fact, properly instructed, could have found the essential elements of the offense beyond a reasonable doubt. (See Jackson v. Virginia (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 573, 99 S.Ct. 2781].) Defendant’s association with the holder of the invalid credit card, his entering the store and remaining there while choosing merchandise for which he did not himself offer to pay, and his flight from the store and then from the parking structure after being told to remain, and his directions to his female companion to “drop it,” constituted sufficient evidence of felonious intent and consciousness of guilt under the test we are required to apply under Jackson. Thus, the rule of Burks v. United States (1978) 437 U.S. 1 [57 L.Ed.2d 1, 98 S.Ct. 2141], Greene v. Massey (1978) 437 U.S. 19 [57 L.Ed.2d 15, 98 S.Ct. 2151], and People v. Pierce (1979) 24 Cal.3d 199, 210 [155 Cal.Rptr. 657, 595 P.2d 91], does not bar retrial of the burglary count. (Cf. In re Johnny G. (1979) 25 Cal.3d 543, 548 [159 Cal.Rptr. 180, 601 P.2d 196].)

Ms. Presgraves had further testified that defendant possessed a Hickory Farms bag while inside the store.

In the event of retrial of count I, the court should instruct on aiding and abetting in light of People v. Beeman (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318].

Should defendant be retried and convicted of the counts involving the firearm, as alleged in counts It and III, the trial court cannot separately punish him for these violations because they involve the same act within the meaning of Penal Code section 654. (See People v. Cruz (1978) 83 Cal.App.3d 308, 332-333 [147 Cal.Rptr. 740]; People v. Jurado (1972) 25 Cal.App.3d 1027, 1033 [102 Cal.Rptr. 498].) The appropriate procedure in sentencing defendant would be to impose sentences as to both weapons counts but to stay execution of sentence on one count pending completion of defendant’s service of sentence and finality of judgment. (See People v. Niles (1964) 227 Cal.App.2d 749 [39 Cal.Rptr. 11].)